## SARAH D. MOLER v. STATE BANK OF BIGELOW AND ANOTHER.[1]

February 21, 1929.

No. 27,119.

[1]Reported in 223 N. W. 780.

450

See 3 R. C. L. 542; 1 R. C. L. Supp. 849; 4 R. C. L. Supp. 198; 5 R. C. L. Supp. 181.
See 3 R. C. L. 1148; 1 R. C. L. Supp. 1000; 4 R. C. L. Supp. 237; 6 R. C. L. Supp. 228; 7 R. C. L. Supp. 115.

*E. J. Jones* and *E. H. Nicholas,* for appellant.

*M. E. Stone,* for respondent Moler.

*Somsen, Dempsey & Flor,* for respondent First State Bank of Kasota.

WILSON, C. J.

State Bank of Bigelow appealed from an order denying its motion for a new trial.

For six months immediately prior to the transaction herein mentioned plaintiff lived at Bigelow, Minnesota, in the home of her son-in-law, E. O. Schweppe, who was the agent of the Standard Oil Company in charge of its local filling station. Schweppe carried a personal bank account with the Bigelow bank. He also made almost daily remittances to the Standard Oil Company with drafts purchased from the local bank with cash and checks received from his customers. On one occasion he cashed an item of $1,500 not connected with the oil business. On three occasions Schweppe appeared at the local bank with a $30 pension certificate, payable to plaintiff and indorsed by her and, upon indorsing his name thereon, was paid the amount thereof. On one occasion he also cashed an ordinary check for plaintiff.

Plaintiff did no business with the local bank. The person acting for the bank in the transaction hereinafter mentioned knew that plaintiff lived in the Schweppe home three blocks distant from the bank. Prior to living in the Schweppe home at Bigelow, plaintiff lived for about ten years at Kasota, where she then and since has conducted her banking business with the First State Bank of Kasota. She there carried a checking account.

On January 10, 1927, the Kasota bank issued to plaintiff its interest-bearing certificate of deposit for $800, payable six months after date. Schweppe stole it. He forged plaintiff's name on the back thereof and, on March 17, 1927, presented it to the Bigelow bank, indorsed it, and requested the bank to cash it. The teller in the Bigelow bank phoned to the Kasota bank and asked if it would

pay the certificate before maturity and, upon receiving an affirmative answer, accepted the certificate so indorsed and gave Schweppe $150 in cash, a draft for $75, and credit on his checking account for $575. This was gradually diminished by checks until April 5, when the account was wholly checked out. In the usual course of business the Bigelow bank indorsed the certificate and forwarded it through the usual channels to the Kasota bank, which paid it on March 22, 1927. All the parties discovered the true facts about April 29, 1927. This is an action in conversion.

The trial court found that both banks were liable; that the Bigelow bank was guilty of negligence in cashing the certificate without making an investigation as to the genuineness of the purported signature of plaintiff; and concluded that as between the banks the Bigelow bank was primarily and the Kasota bank secondarily liable.

■ Was the Bigelow bank negligent? Should it have made an investigation as to the genuineness of the purported signature of plaintiff? If so, what investigation? Did this bank act imprudently in the cashing of this certificate? We know now what the bank did not know then. We know there was a forgery. The bank's conduct must be judged from the standpoint it occupied at the time of the transaction and from the circumstances as they presented themselves to the bank at the time. Now we know that Schweppe was a criminal and unworthy of confidence, but that was not within the bank's vision. As the bank honestly viewed the situation, there was not a single suspicious circumstance upon the horizon. Schweppe stood before its counter as a local business man holding a position of confidence with a successful and discriminating business corporation. He seemed to deserve the confidence which the bank put in him. He was a reputable business man. He was not a stranger. This is not a case of negligent identification. Plaintiff was known to be a member of his household. He was her son-in-law. The pension checks had been presented in much the same form. What was the inquiry that it did not make? The bank could not hold business if it made impertinent inquiries of business men. Most honest men would feel offended if a banker asked under

such circumstances if the purported indorsement was genuine. Much more would they be offended if the banker would say: "We will go down to your house and ask your mother-in-law if the indorsement is hers;" or, "You bring your mother-in-law to the bank so she can tell us that she made the indorsement;" or even if the banker should say: "With your permission I'll phone Mrs. Moler and ask her if she has indorsed the certificate and put it in your hands." Business is not so transacted and it cannot be. If a banker so acted he could not stay in business. It would be unreasonable. It is not the conduct of an ordinary, reasonable or prudent banker or business man. The bank exercised reasonable business prudence. It became a bona fide holder within Pennington County Bank v. First State Bank, 110 Minn. 263, 125 N. W. 119, 26 L.R.A.(N.S.) 849, 136 A. S. R. 496. We are of the opinion that the Bigelow bank was free from negligence.

█ The rule that a bank must know the signature of its customer has a direct reference to the ordinary depositor having a checking account. 42 Banking L. J. 911, 913, § 78. There are three early cases which applied the rule to a certificate of deposit. Stout v. Benoist, 39 Mo. 277, 90 Am. D. 466; State Nat. Bank v. Freedmen's Sav. & Tr. Co. 2 Dill. (U. S.) 11; Merchants Bank v. Marine Bank, 3 Gill (Md.) 96, 43 Am. D. 300. These cases so held because the bank had the customer's signature card, which put in the bank's hands the means of determining whether the signature was genuine. See 1 Paton's Digest, §§ 1095, 1096, 2305; 2 Paton's Digest, §§ 2304a, 2305a. The Kasota bank did not keep any signature card or book.

A bank which issues a cashier's check is not bound to know the signature of the payee therein. Yatesville Banking Co. v. Fourth Nat. Bank, 10 Ga. App. 1, 72 S. E. 528; Farmers B. & T. Co. v. Farmers State Bank, 148 Ark. 599, 231 S. W. 7. The maker of a promissory note is not bound to know the signature of the payee.

Certificates of deposit in a bank, supported by their origin, are treated as if they were notes of the bank. They are frequently purchased by customers, payable to nonresidents; and of course in such cases the bank could not know the signature of the payee.

The rule relates to the drawer's signature. In the case of a certificate of deposit made in the form here used the bank is the drawer and the drawee. This is not a case of a forged instrument but of a forged indorsement. Where the name of the payee as indorser has been forged, the maker or drawee does not warrant the validity of the indorsement as one which he is presumed to know under the rule. 41 Central L. J. 31; Young & Son v. Lehman, Durr & Co. 63 Ala. 519; Star Fire Ins. Co. v. New Hampshire Nat. Bank, 60 N. H. 442; 25 Banking L. J. 368; Marine Nat. Bank v. Nat. City Bank, 59 N. Y. 67, 17 Am. R. 305; Figuers v. Fly, 137 Tenn. 358, 193 S. W. 117; 7 C. J. 692, § 420; 8 C. J. 763, § 1028; Wellington Nat. Bank v. Robbins, 71 Kan. 748, 81 P. 487; First Nat. Bank v. N. W. Nat. Bank, 152 Ill. 296, 38 N. E. 739, 26 L. R. A. 289, 43 A. S. R. 247. The bank must however determine the genuineness of the indorsement. Third Dec. Dig. (Vol. 4) p. 638, § 148(2), p. 989, § 201. It is not precluded from recovery from the holder to whom it made payment. 2 Daniel, Neg. Inst. §§ 1364, 1365; Canal Bank v. Bank of Albany, 1 Hill (N. Y.) 287. It is liable for a failure to exercise ordinary care in respect thereto, but good faith and the exercise of due care will not protect it from conversion of property to which it failed to acquire title because of a forged indorsement.

We reach the conclusion that the rule of Stout v. Benoist, 39 Mo. 277, 90 Am. D. 466, and similar cases, is not consistent with modern banking, and hold that the rule that the bank must know the signature of its customer has no application to the indorsement of a certificate of deposit by the payee therein.

■ There is no negligence in this case. Both banks acted in good faith. It is sometimes said that where the parties are equally innocent the drawee is the loser, but that expression is applicable where the drawee must, under the rule, know the signature. 12 A. L. R. 1091, anno. If both are equally at fault or if both are innocent, neither should be permitted to deny its protection to the other, and the loss must fall upon both.

■ The indorser's warranty, under G. S. 1923, § 7109, relates to the face of the instrument and not to the indorsements upon the back thereof.

■ When the Bigelow bank transmitted this certificate with its indorsement thereon, it impliedly guaranteed, among other things, that all previous indorsements, including the indorsement of the payee, were genuine and that it had good title to the certificate. Youngberg v. Nelson, 51 Minn. 172, 53 N. W. 629, 38 A. S. R. 497; Brown v. Ames, 59 Minn. 476, 61 N. W. 448; Germania Bank v. Boutell, 60 Minn. 189, 62 N. W. 327, 27 L. R. A. 635, 51 A. S. R. 519; Crosby v. Wright, 70 Minn. 251, 73 N. W. 162; State v. Merchants Nat. Bank, 145 Minn. 322, 177 N. W. 135; 8 C. J. 393, § 581; 3 R. C. L. 1148, § 363. It follows that as between the banks the Bigelow bank is liable to the Kasota bank under the contract of indorsement.

■ Both banks participated in the acts constituting the conversion of plaintiff's certificate of deposit. Such conversion was wrongful, and liability follows. Evenson v. Waukesha Nat. Bank, 189 Wis. 170, 207 N. W. 415; First Nat. Bank v. Bremer, 7 Ind. App. 685, 34 N. E. 1012, 52 A. S. R. 461. Plaintiff is entitled to judgment against both of them. But as between the banks the one is primarily and the other secondarily liable.

Affirmed.