Edward DENN, d.b.a. Advance Foam of Minnesota, Inc., Appellant,

v.

FIRST STATE BANK OF SPRING LAKE PARK, defendant and third party plaintiff, Respondent,

v.

Dennis L. CARLSON, Third Party Defendant.

No. 51432.

Supreme Court of Minnesota.

March 5, 1982.

David G. Johnson, Prior Lake, for appellant.

Krass, Meyer & Kanning and Phillip R. Krass, Shakopee, for respondent.

John S. Jackson, Minnesota Bankers Assn., Minneapolis, for amicus curiae.

WAHL, Justice.

This appeal raises the issue of whether a depositary bank[1] which collected and paid out on two checks bearing forged indorsements is absolved from liability to the payee of the checks under Minn.Stat. § 336.3–419(3) (1980)[2] when it acted in good faith and in accordance with reasonable commercial standards. We hold that it is.

The facts are straightforward. Plaintiff Edward Denn, the sole shareholder of Advance Foam of Minnesota, brought an action against the First State Bank of Spring Lake Park (Spring Lake) and Northfield National Bank (Northfield) for conversion of two checks paid over a forged indorsement. Both checks were drawn on Northfield by Blesener Roofing and Insulation and were issued to Advance Foam. The first check, dated July 7, 1978, was in the amount of $5,004.67. The second check,

dated August 5, 1978, was in the amount of $2,468.38.

Dennis Carlson, a former employee of Advance Foam, deposited the checks to an account which he had opened at Spring Lake on March 29, 1978. He and his wife were joint owners of that account, which was titled "Dennis Carlson/Advanced Foam Account." Carlson indorsed the checks "Advanced Foam/Dennis Carlson" before depositing them.

Spring Lake gave Carlson provisional credit and then presented the checks to drawee Northfield, which paid them. Once Northfield had paid the checks, Spring Lake allowed Carlson to withdraw the money from the account. On September 5, 1978, Denn executed an Affidavit of Forgery in which he stated that he had not received the proceeds of the checks in question, but the affidavit reached Northfield too late to prevent payment.

After Denn brought his conversion action against the two banks, Spring Lake cross-claimed against Northfield on the ground of failure to comply with proper banking procedures and initiated a third-party complaint against Carlson. Plaintiff then also asserted a claim against Carlson, and Northfield cross-claimed against Spring Lake, alleging that Spring Lake had breached the presentment warranties imposed on a collecting bank by Minn.Stat. § 336.4–207 (1980). The trial court granted Northfield's motion for summary judgment on its cross-claim against Spring Lake, after which Denn dismissed without prejudice his cause of action against Northfield.

The court submitted the remaining issues to a jury which found that (1) Spring Lake had acted in accordance with reasonable commercial standards in accepting for deposit the two checks in question, (2) Denn

---

1. The Uniform Commercial Code provides these definitions: "(a) 'Depositary bank' means the first bank to which an item is transferred for collection even though it is also the payor bank; * * * * (d) 'collecting bank' means any bank handling the item for collection except the payor bank." Minn.Stat. § 336.4–105 (1980). Under the facts of this case, the First State Bank of Spring Lake Park

is both a depositary bank and a collecting bank. Northfield National Bank, the drawee (or payor) bank, is neither a collecting nor a depositary bank.

2. This section is the same as U.C.C. § 3–419(3), which has been adopted in its entirety by each of the jurisdictions mentioned herein.

and Carlson were not business partners, (3) Carlson did not have the authority to indorse and deposit the two checks, (4) the check proceeds were not used in furtherance of the Denn business, (5) Denn had been negligent in the use of his corporate name, and (6) Denn's negligence did not contribute to the making of the indorsement at issue.

The court found Carlson liable to Denn in the amount of the forged checks and denied Denn's claim against Spring Lake. The court held, in effect, that Minn.Stat. § 336.-3–419(3) absolves from liability in conversion a depositary bank which acts in good faith and in accordance with reasonable commercial standards. Since the depositary bank is ultimately liable on the presentment warranties of Minn.Stat. § 336.4–207, the effect of the trial court's decision is to require the rightful payee of a check to bring his conversion action against the drawee bank, which will then proceed against the depositary bank. Denn appeals from the trial court's decision in this regard and argues that he should be allowed to collect directly from Spring Lake, the depositary bank.

Appellant's position would be unassailable at common law. A payee was allowed to bring his conversion suit directly against the depositary bank. *Moler v. State Bank of Bigelow*, 176 Minn. 449, 223 N.W. 780 (1929). The depositary bank was liable to the true owner of the check because the first party to take from a forger was ultimately liable on his indorsement. F. Kessler, *Forged Instruments*, 47 Yale L.J. 863 (1938). In Minnesota, this result obtained prior to the adoption of the U.C.C. whether the bank cashed the check or gave the forger provisional credit. *Rosacker v. Commercial State Bank*, 191 Minn. 553, 254 N.W. 824 (1934).

The Minnesota legislature adopted the Uniform Commercial Code (U.C.C.) in 1965. Although the Code contemplates actions in conversion,[3] there is no provision which ex- pressly governs suits by a payee against a depositary bank. Spring Lake does not claim that the U.C.C. prohibits Denn from bringing this action. It does claim, however, to be absolved from liability to Denn by section 336.3–419(3), which provides:

> Subject to the provisions of this Act concerning restrictive indorsements a representative, including a depositary or collecting bank, who has in good faith and in accordance with the reasonable commercial standards applicable to the business of such representative dealt with an instrument or its proceeds on behalf of one who was not the true owner is not liable in conversion or otherwise to the true owner beyond the amount of any proceeds remaining in his hands.

Spring Lake claims it is free of liability to Denn because it (1) was acting in a representative capacity, (2) was acting in good faith and in accordance with reasonable commercial standards, and (3) did not retain any "proceeds" of the forged instruments.

There is considerable controversy among the courts and legal commentators over the question of when a bank is acting in a representative capacity. The Code itself defines a representative simply as "an agent, an officer of a corporation or association, and a trustee, executor or administrator of an estate, or any other person empowered to act for another." Minn.Stat. § 336.1–201(35) (1980). At common law such an agent is "liable in conversion when he disposes of goods for his principal, even though the agent has acted in good faith and no longer exercises control over the converted goods." *Cooper v. Union Bank: California Protects the True Owner Against a Forged Indorsement Despite Uniform Commercial Code Section 3–419(3)*, 25 Hastings L.J. 715, 719 (1974) (hereinafter *California Protects*). There was a common-law exemption from such liability, however, for a broker who dealt with stolen negotiable bonds on behalf of his principal. *Id.; First National Bank v. Goldberg*, 340 Pa. 337, 17 A.2d 377 (1941).

---

**3.** The Uniform Commercial Code provides that, "An instrument is converted when it is paid on a forged endorsement." Minn.Stat. § 336.3– 419(1)(c) (1980). Denn's conversion claim arose when Northfield paid Spring Lake over Carlson's forged indorsement.

Did the Code drafters intend merely to codify the existing exemption for brokers, or did they intend also to exempt from liability depositary and collecting banks dealing with order instruments in the normal check collection process? To resolve this question we turn to the history of U.C.C. § 3–419(3) and its comments.

The "representative exception" was first included in the May 1949 draft, which stated that "A representative who in good faith has dealt with an instrument or its proceeds is not liable for conversion even though his principal was not the owner of the instrument." *Payee v. Depositary Bank: What is the UCC Defense to Handling Checks Bearing Forged Indorsements?* 45 U.Colo.L. Rev. 281, 308 (1974) (quoting ALI & National Conference of Commissioners on Uniform State Laws, Uniform Commercial Code § 3–427 (May 1949 Draft)). Under "Purposes of Section," the drafters went on to state that the intent of the section is "to adopt the rule of decisions which have held that a *broker* who *sells* a negotiable instrument for his principal * * * is not liable for conversion of the instrument." *Id.* at 309 (citing Official Comment) (emphasis added). It is quite likely that the drafters of the 1949 version of the Code meant to exempt from liability only those brokers who had been exempt at common law.

However, in 1951 the drafters added to section 3–419(3) the phrase "including a depositary or collecting bank." Id. The fact that this crucial phrase was added to the Code and was not part of the original version supports the idea that the 1951 drafters intended specifically to exempt depositary and collecting banks from liability. In 1952, the drafters added Comment 5, which also included a reference to depositary banks. *Id.* Comment 5 states:

Subsection (3), which is new, is intended to adopt the rule of decisions which has held that a representative such as a broker or depositary bank, who deals with a negotiable instrument for his principal in good faith is not liable to the true owner for conversion of the instrument or otherwise, except that he may be compelled to turn over to the true owner the instrument itself or any proceeds of the instrument remaining in his hands.

Minn.Stat.Ann. § 336.3–419, at 471 (West 1966). The fact that the phrase "such as a broker or *depositary bank*" is used to describe representative strongly suggests that the drafters intended to expand the scope of the common-law exception for brokers.[4]

Comment 6 to section 3–419(3) further supports the idea that the drafters intended to offer defenses to a depositary bank which took from a forger. Comment 6 states:

The provisions of this section are not intended to eliminate any liability on warranties of presentment and transfer (Section 3–417). Thus a collecting bank might be liable to a drawee bank which had been subject to liability under this section, even though the collecting bank might not be liable directly to the owner of the instrument.

*Id.* Since, at common law, a collecting bank which took from a forger would have been liable to the true payee, the suggestion here that such a bank "might not be liable" implies that the bank now has some defenses by which it may absolve itself from its common-law liability.

Several courts have interpreted "representative" not to include a depositary or collecting bank. The Pennsylvania Court of Common Pleas, in *Ervin v. Dauphin Deposit*

4. At least one commentator believes that the bankers, who presumably urged the addition of the phrase "including a depositary or collecting bank," intended to relieve such banks from liability only when they were acting in the capacity of a broker:

Unfortunately, the drafters of the Code did not leave this provision in a separate action where it belongs. When it was incorporated as a subsection under Section 3–419, its

meaning was inevitably intermingled with the notion of handling checks bearing forged indorsements. It is probable that the drafters never foresaw the way in which its meaning would get expanded.

*Payee v. Depositary Bank: What is the UCC Defense to Handling Checks Bearing Forged Indorsements?*, 45 U.Colo.L.Rev. 281, 311 (1974).

*Trust Co.*, 84 Dauph. 280, 38 Pa.D. & C.2d 473, 3 U.C.C.Rep. 311 (1965), reasoned that the legislature could not have intended to exempt collecting and depositary banks from their common-law liability to the true payee because such an exception would lead to an unreasonable result. *Id.* at 287, 38 Pa.D. & C.2d at 483, 3 U.C.C.Rep. at 318–19. It would seem to limit the liability of the collecting bank "in the face of other sections of the code which place the ultimate liability on the check cashing bank when the payee's name is forged * * * because of the check cashing bank's warranties on the indorsements." *Id.* at 287, 38 Pa.D. & C.2d at 483, 3 U.C.C.Rep. at 319.

The California Supreme Court has reached the same results primarily because of the absence of Code comment on such a major change from the common law: "Had such substantial and controversial deviation from prior law been intended, moreover, it could be expected that the official commentary to section 3419 would have so stated and would have included extensive explanation of the reasons for the change." *Cooper v. Union Bank*, 9 Cal.3d 371, 382, 107 Cal. Rptr. 1, 9–10, 507 P.2d 609, 617 (1973). Similarly, the District Court of the Northern District of Texas has concluded simply that section 3–419(3) does not contemplate the normal check collection process. *Tubin v. Rabin*, 389 F.Supp. 787 (N.D.Tex.1974).

The arguments of the *Ervin* and *Cooper* courts are persuasive, but we are compelled to reach an opposite conclusion. We can ignore neither the plain language of the statute which expressly includes depositary and collecting banks in its description of representatives nor the comments which appear to exclude such banks from liability.

Professor Stanley V. Kinyon, in his comment to the Minnesota version of the Code, noted that section 336.3–419(3) applies to collecting banks and went on to distinguish *Moler* from *Rosacker*. The *Moler* decision "is *not* within the rule of this subsection and will not be changed" because the bank acted as a purchaser in cashing the check and not as a representative or collecting bank. Minn.Stat.Ann. § 336.3–419(3)

(1966), p. 468 (emphasis in original). However, the *Rosacker* decision would be changed by the U.C.C. because the bank, acting in a representative capacity, credited the forger's account and permitted withdrawals from it. *Id.* at 469. Appellant offers us no authority for ignoring this comment, which the legislature has left in its original form since its adoption.

Professor Allan Fransworth's analysis parallels that of Kinyon: "The depositary bank would be liable under the Code if it cashed checks, but it would not be liable if it took them for collection and gave a provisional credit. If it cashed them, then it is not a representative, but is purchasing the checks." Farnsworth & Leary, *U.C.C. Brief No. 10: Forgery and Alteration of Checks*, 14 Prac.Law, No. 3, 75, 79 (1968).

The facts of this case are similar to those of *Rosacker*. In allowing Carlson to deposit the Advance Foam checks in his account and then presenting the checks to Northfield for payment, Spring Lake was acting as Carlson's representative. Spring Lake is, therefore, absolved of liability to Denn unless it has failed to act in good faith and in accordance with reasonable commercial standards or has retained any proceeds of the checks.

The trial court found on the jury's special verdict that Spring Lake had acted in good faith and in accordance with reasonable commercial standards. Denn did not contest testimony to this effect at trial. Rather, he urges this court, as a matter of law, to find, as did the Court of Appeals of Washington, that a bank is not acting in accordance with reasonable commercial standards when it accepts for deposit to a personal account checks which are payable to a corporation. *Von Gohren v. Pacific National Bank*, 8 Wash.App. 245, 505 P.2d 467 (1973). This we decline to do absent proof that the bank would know either that these checks were payable to a corporation or that Carlson was depositing them in an individual account. Denn has failed to show that the facts of this case fall within the *Von Gohren* rule.

The California Supreme Court rested its decision in the *Cooper* case on the theory that, even though the depositary bank had paid over money to the forger, it had not turned over the "proceeds" of the checks. With reference to the law of constructive trusts, which allows a claimant to trace funds which are rightfully his, the court concludes that "the banks retain the proceeds of the instruments even though amounts set forth in the instruments, in the banks' own money, were remitted to [the forger]." 9 Cal.3d at 379, 107 Cal.Rptr. at 7, 507 P.2d at 615.

The Florida Court of Appeals, faced with this "proceeds" rationale in *Jackson Vitrified China Co. v. People's American Bank*, 388 So.2d 1059 (Fla.Dist.Ct.App.1980), could find no evidence that the drafters of the Code intended such a strained construction. Nor can we. "To the extent that a distinction is drawn regarding the time of payment vis a vis the time of collection, such a distinction is artificial; to the extent that no distinction is made, the provision is rendered nugatory." *Id.* at 1061.

Furthermore, it is the law of this state that, when the depositary bank had disbursed the amount it had received from the drawee bank, it had "paid out the entire proceeds of the check." *Soderlin v. Marquette National Bank*, 214 Minn. 408, 412, 8 N.W.2d 331, 332 (1943). Minnesota thus favors the less mechanistic "balance sheet" view of proceeds, with the result in this case that, because Spring Lake has paid out the total amount to the forger, it no longer holds proceeds of the checks and is not liable to Denn.

There are strong policy arguments in Denn's favor. It is judicially efficient to allow the true payee to proceed directly against a collecting bank. The collecting bank will bear the ultimate loss in most cases. If the payee must sue the drawee bank, the drawee bank will sue the collecting bank on the warranties of Minn.Stat. § 336.4–207 as Northfield did in this case. Therefore, "a suit by the owner-payee against the depositary bank avoids an additional suit and thus resolves the entire dispute in a more economical matter." J. White & R. Summers, Uniform Commercial Code 590 (2d ed. 1980). Collecting banks are also more convenient defendants. While the forged checks may be drawn on several different banks, the forger often cashes or deposits them all at the same bank, or at banks in the same geographical area. Both the payee and the judicial system suffer when the payee is required to sue the drawee banks in a number of jurisdictions to recover on a forged indorsement. The Michigan Court of Appeals relied on this policy consideration when it held that "3–419(3) provides no defense for the collecting bank in a suit by the true owner of the instrument in this type of fact situation." *Sheriff-Goslin Co. v. Cawood*, 91 Mich.App. 204, 210, 283 N.W.2d 691, 694 (1979). The court was concerned about the number of suits that would result if it did not allow a payee's direct action against a depositary bank.

We reluctantly conclude, however, that to deny a collecting bank the defenses of section 336.3–419(3) in Denn's case is to ignore the clear intent of our legislature. As the Florida Court of Appeals so well stated, where the choice is "between following what appears to be bad law, or 'adapting' that law to what we perceive to be commercial reality, * * * [o]ur role commands adherence to lawful legislative decree." *Jackson*, 388 So.2d at 1063. The authority for changing the plain meaning of Minn.Stat. § 336.3–419(3) lies with the Minnesota legislature. Although the people of Minnesota would benefit by a change which would hold a depositary bank directly liable to the true payee of a check which it has paid over a forged indorsement, we hold that Minn. Stat. § 336.3–419(3), as it was passed by the legislature in 1965, provides defenses which absolve the depositary bank of such liability.

Affirmed.

KELLEY, J., took no part in the consideration or decision of this case.