ACROMETAL COMPANIES,
INC., Respondent,

v.

FIRST AMERICAN BANK OF
BRAINERD, Appellant,

Coopers & Lybrand, et al., Defendants.

No. C6–91–368.

Court of Appeals of Minnesota.

Aug. 27, 1991.

Review Denied Oct. 31, 1991.

Michael B. Braman, Larkin, Hoffman, Daly & Lindgren, Bloomington, for respondent.

Jerome B. Pederson, David R. Marshall, Fredrikson & Byron, P.A., Minneapolis, for appellant.

Considered and decided by PETERSON, P.J., and FOLEY, and KALITOWSKI, JJ.

## OPINION

FOLEY, Judge.

Appellant First American Bank of Brainerd ("American Bank") challenges the trial court's summary judgment finding American Bank, a depositary and collecting bank, liable for money paid on forged checks. The trial court found for respondent Acrometal Companies, Inc., the drawer. We reverse and remand.

## FACTS

The facts underlying this dispute are not contested. Dawn Broadmarkle was employed by Acrometal as a bookkeeper in its accounting division in Brainerd. Broadmarkle prepared Acrometal's checks and

stamped a facsimile signature on them. The checks were drawn on Acrometal's account with First Bank National Association ("First Bank"). Broadmarkle also reconciled the monthly checking account statements from First Bank. By having responsibility for accounts payable, checks and statement reconciliations, Broadmarkle was able to embezzle over $300,000 from Acrometal in four years.

Broadmarkle wrote checks to "BBP Enterprises," "Surety Protection Agency" and "Enterprises," companies in which she had an interest. These checks were deposited into the companies' accounts with American Bank, the depositary/collecting bank. American Bank forwarded the checks for actual payment to First Bank, the payor bank, where Acrometal maintained its checking account.

In 1987 Broadmarkle was transferred to another division of Acrometal. When another person reconciled the checking account, Broadmarkle's scheme was discovered. Broadmarkle was prosecuted, pleaded guilty and was sentenced for embezzlement.

Acrometal commenced an action against American Bank. Acrometal's insurance company commenced a subrogation action against American Bank, Coopers & Lybrand, First Bank and First Bank Central Association. The two actions were consolidated. Acrometal moved for summary judgment solely against American Bank. American Bank filed a cross-motion for summary judgment, claiming, inter alia, that Acrometal could not assert an action directly against American Bank. American Bank maintained:

1. Acrometal must sue the payor bank directly on claims the checks were wrongfully paid and relief against the depositary/collecting bank is not available under Minn.Stat. § 336.4–202 and Minn.Stat. § 336.3–419.

2. The common law theory of conversion has been replaced by the Uniform Commercial Code.

3. American Bank has defenses pursuant to Minn.Stat. §§ 336.3–406, 336.4–406, 336.4–103, 336.3–405 (1990) and Minn. R.Civ.P. 56.05.

The trial court certified these questions to this court. Acrometal appealed and American Bank filed a notice of review. This court ordered informal briefing on the question of jurisdiction. Acrometal then dismissed its appeal.

After American Bank and Acrometal made cross-motions for summary judgment, the trial court entered summary judgment against American Bank. American Bank appeals.

## ISSUES

1. Can Acrometal assert a direct cause of action against American Bank under Minn.Stat. §§ 336.3–419 and 336.3–202?

2. Has the common law theory of conversion been replaced by the Uniform Commercial Code?

3. Does American Bank have defenses under Minn.Stat. §§ 336.4–406, 336.3–405, 336.3–406, 336.4–103?

4. Did Acrometal comply with Minn. R.Civ.P. 56.05?

## ANALYSIS

On appeal from summary judgment, we review the record to determine if there are any issues of material fact in dispute and whether the trial court erred in applying the law. *Shuman v. University of Minnesota Law School*, 451 N.W.2d 71, 74 (Minn. App.1990), *pet. for rev. denied* (Minn. Mar. 16, 1990) (citing *Goodkind v. University of Minnesota*, 417 N.W.2d 636, 638 (Minn. 1988)). If the moving party in a summary judgment motion makes out a prima facie case, the burden shifts to the nonmoving party. *Minnesota Mut. Fire & Casualty Co. v. Retrum*, 456 N.W.2d 719, 723 (Minn. App.1990) (citing *Thiele v. Stich*, 425 N.W.2d 580, 583 (Minn.1988)). The nonmoving party must show by affirmative evidence a factual dispute exists. *Carlisle v. City of Minneapolis*, 437 N.W.2d 712, 715 (Minn.App.1989).

1. American Bank asserts Acrometal does not have a claim of relief against American Bank under Minnesota law be-

cause a drawer may not assert a direct cause of action against a depositary/collecting bank that is not also the payor bank. Therefore, American Bank argues, the trial court erred by granting summary judgment against American Bank. We agree.

A depositary bank is defined by the Uniform Commercial Code as "the first bank to which an item is transferred for collection." Minn.Stat. § 336.4–105(a) (1990). A collecting bank is any bank that handles an item for collection except a payor bank. Minn.Stat. § 336.4–105(d). Here, American Bank is the depositary/collecting bank. A payor bank is the drawer's bank at which the drawer's funds are located and which actually pays the check. Minn.Stat. § 336.4–105(b) (1990). First Bank is the payor bank. Acrometal is the drawer. Broadmarkle and her various companies are the payees. The following diagram showing how the checks moved may be useful:

```
              Broadmarkle & Companies
                     Payees

Acrometal                              American Bank
Drawer                       Depositary/Collecting Bank

              First Bank
              Payor Bank
```

We hold that Acrometal cannot assert a direct cause of action against American Bank. Acrometal may, however, commence an action against First Bank. *See Garnac Grain Co. v. Boatmen's Bank & Trust Co.*, 694 F.Supp. 1389, 1394–95 (W.D.Mo.1988) (delineating banks' recoveries under warranty theories). Minn.Stat. § 336.3–419(1)(c) provides an instrument is converted when it is *paid* on a forged instrument. Minn.Stat. § 336.3–419(3), however, provides that

> a depositary or collecting bank, who in good faith and in accordance with the reasonable commercial standards applicable to the business of such representative dealt with an instrument or its proceeds on behalf of one who was not the true owner is not liable in conversion or otherwise to the true owner beyond the amount of any proceeds remaining in his hands.

The U.C.C. does not explicitly state to whom the depositary/collecting bank may be liable if it does not act "in good faith or in accordance with reasonable commercial standards." The U.C.C. comment, however, elaborates, stating that

> a collecting bank might be liable to a [payor] bank which had been subject to liability under this section, even though the collecting bank might not be liable directly to the owner of the instrument.

M.S.A. § 336.3–419 U.C.C. comment 6.

Not only does the U.C.C. imply a drawer cannot directly sue a depositary/collecting bank, there are a number of practical reasons supporting our conclusion. Because of the drawer's relationship with the payor bank as a customer, the payor bank is likely to have ready access to facts and evidence from the drawer about the forgery. If the drawer, however, directly sues the depositary/collecting bank, the depositary/collecting bank may be forced to go through protracted discovery because the payor bank is likely to favor its custom-

er, thus making it difficult for the depositary/collecting bank to determine and prove its defense. *See Stone & Webster Eng'g Corp. v. First Nat'l Bank & Trust Co.*, 345 Mass. 1, 184 N.E.2d 358 (1962).

■ In the interest of judicial economy, we hold that First Bank, the payor bank, may implead American Bank, the depositary/collecting bank, as a third-party defendant. To implead a third party, Minn. R.Civ.P. 14.01 provides that

a defendant as a third-party plaintiff may serve a summons and complaint, together with a copy of plaintiff's complaint upon a person * * * who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff and after such service shall forthwith serve notice thereof upon all other parties to the action.

The purpose of this rule is to prevent a multiplicity of claims by allowing a defendant to assert a third-party claim that could be asserted in another action. *Koenigs v. Travis*, 246 Minn. 466, 469, 75 N.W.2d 478, 481 (1956).

In order to bring in a third party, a substantive basis must exist for that claim. *Id.* Here, a third-party complaint is appropriate because American Bank's liability derives from First Bank's liability to Acrometal. *See Lyman Lumber Co. v. Dior Dev., Inc.*, 409 N.W.2d 30, 32 (Minn. App.1987), *pet. for rev. denied* (Minn. Sept. 30, 1987). The third-party action would be a combination of a suit by Acrometal against First Bank and a suit by First Bank against American Bank. First Bank would be the third-party plaintiff. *See Gustafson v. Johnson*, 235 Minn. 358, 374–75, 51 N.W.2d 108, 117 (1952).

The plaintiff may assert any claim against the third-party defendant arising out of the transaction * * * that is the subject matter of the plaintiff's claim against the third-party plaintiff, and the third-party defendant thereupon shall assert any defenses as provided in Rule 12 and any counterclaims and cross-claims as provided in Rule 13.

Minn.R.Civ.P. 14.01.

Here, Broadmarkle stamped the checks with Acrometal's signature plate. The record here, however, does not contain the canceled checks, and there are fact questions involving those checks. If Acrometal sues First Bank directly, First Bank can produce copies of the checks and the fact questions can be resolved. First Bank can then implead American Bank as a third-party defendant.

A direct suit by a drawer against a depositary/collecting bank appears to be a case of first impression in Minnesota. Our decision, however, is consistent with *Denn v. First State Bank of Spring Lake Park*, 316 N.W.2d 532 (Minn.1982). *Denn* held a payor bank may have a cause of action against the collecting bank. In *Denn*, two checks were paid despite a forged endorsement. The payee brought an action for conversion against the depositary/collecting bank and payor bank. *Id.* at 533. The depositary/collecting bank gave provisional credit until it presented the checks and was reimbursed by the payor bank. *Id.* The depositary/collecting bank did not allow the funds to be withdrawn until it received reimbursement from the payor bank. *Id.*

A jury found the depositary/collecting bank acted in a commercially reasonable manner when it accepted the two checks. *Id.* at 533–34. The effect was that the payee had to bring a conversion suit against the payor bank, and the payor bank had to proceed against the depositary/collecting bank.

The *Denn* court observed:

Although the Code contemplates actions in conversion, there is no provision which expressly governs suits by a payee against a depositary bank.

*Id.* at 534 (footnote omitted). The *Denn* court also pointed out that the U.C.C. drafters included depositary or collecting bank in section 336.3–419(3) in 1951. *Id.* at 535. Furthermore, noted the *Denn* court,

"a collecting bank might be liable to a [payor] bank which had been subject to liability under this section even though the collecting bank might not be liable directly to the owner of the instrument."

*Id.* (quoting M.S.A. § 336.3–419 U.C.C. comment 6). The supreme court refused to adopt the rule that "a bank is not acting in accordance with reasonable commercial standards when it accepts for deposit to a personal account checks which are payable to a corporation." *Denn,* 316 N.W.2d at 536.

■ Whether, as a third party, American Bank will be held liable because of the forgery depends on the type of forgery. The U.C.C. discusses two types of forgeries. The first is a forged signature where the endorsement is valid. In this situation, the drawer can demand the payor bank re-credit its account. *See* Minn.Stat. § 336.4–401. The payor can shift the loss upstream in the chain on a warranty theory. *See* *Garnac,* 694 F.Supp. at 1394.

The second is a forged endorsement. In this situation also, the drawer can demand the payor bank re-credit its account. The loss, however, stays with the payor bank because the payor bank is barred from recovering backward in the chain by the final payment rule in Minn.Stat. § 336.3–418 (1990).

■ Because Broadmarkle fraudulently prepared these checks, she was not the true owner. Therefore, First Bank can sue American Bank under warranty theories. As a third-party defendant, American Bank can assert an affirmative defense that it acted in good faith and in a commercially reasonable manner under Minn.Stat. § 336.4–202 (1990).

Minn.Stat. § 336.4–202(1)(a) requires a depositary/collecting bank to use ordinary care in presenting an item for collection. American Bank is also subject to a good faith requirement. Minn.Stat. § 336.4–103(1) (1990). The trial court granted summary judgment because American Bank did not exercise ordinary care when it accepted and presented checks without supplying an endorsement or securing an endorsement from the payee. We find this to be a material fact issue for trial on the merits and not appropriate for summary judgment.

The questions of whether Broadmarkle's signature was without authority and whether the checks were correctly endorsed are also material fact questions. *See* Minn.Stat. §§ 336.3–202(2), 336.1–201 (1990). Summary judgment is clearly inappropriate here.

■ 2. American Bank asserts that common law conversion has been replaced by Minnesota's Commercial Code. Consequently, American Bank argues, the trial court erred by finding American Bank liable under the common law theory of conversion.

The Minnesota comment notes that, while section 336.3–419 is not intended to cover all conversion theories, it does make clear when depositary/collecting banks are *not* guilty of conversion. The comment to section 336.3–419(3) that states an instrument is converted when it is paid on a forged endorsement is in accord with Minnesota cases. *See* M.S.A. § 336.3–419(3) Minnesota comment. The U.C.C. creates statutory limitations on the general rule of conversion law.

One exception is where the depositary/collecting bank acted in good faith and observed commercially reasonable standards. *See* Minn.Stat. § 336.3–419(3). M.S.A. § 336.3–419(3) U.C.C. comment 5 states:

> Subsection (3) * * * is intended to adopt the rule of decisions which has held that a representative, such as a broker or depositary bank, who deals with a negotiable instrument for his principal in good faith is not liable to the true owner for conversion of the instrument or otherwise, except that he may be compelled to turn over to the true owner the instrument itself or any proceeds of the instrument remain in his hands.

Consequently, if American Bank acted within commercially reasonable commercial standards, it is not liable under the common law theory of conversion.

Again, whether American Bank acted in accordance with commercially reasonable standards is ultimately a material fact question precluding the grant of summary judgment.

3. American Bank argues Acrometal's action is barred by Minn.Stat. §§ 336.4–406, 336.3–406, 336.3–405 and 336.4–103. We divide our analysis into three parts.

■ First, Minn.Stat. §§ 336.4–406 and 336.3–406 both concern negligence. Minn. Stat. § 336.4–406 is narrower than Minn. Stat. § 336.3–406 and applies only to the payor bank and its customer. The Minnesota code comment to section 336.4–406 notes:

This section deals solely with the rights and duties between a payor bank and its customer with respect to items paid and charged to the customer's account which were altered or on which the customer's or an indorser's signature was unauthorized. Thus, the section does *not* deal with cases involving * * * collecting banks who have paid the wrong person.

M.S.A. § 336.4–406 Minnesota comment (emphasis added).

Acrometal argues this defense is unavailable to the depositary/collecting bank because it specifically relates to the payor bank and its customer. We agree.

■ While section 336.3–406 also concerns negligence, it is much wider in scope than section 336.4–406. Section 336.3–406 is an exception to the general rule that forged endorsements are ineffective to pass title or authorize the payor bank to pay. Section 336.3–406 contemplates contribution:

Any person whose negligence substantially contributes to a material alteration of the instrument or to the making of an unauthorized signature is precluded from asserting the alteration or lack of authority against a holder in due course or against a drawee or other payor who pays the instrument in good faith and in accordance with the reasonable commercial standards of the drawee's or payor's business.

U.C.C. comment 7 notes:

The most obvious case is that the drawer who makes use of a signature stamp and is negligent in looking after it.

M.S.A. § 336.3–406 U.C.C. comment 7. This appears to apply here. The checks went through proper banking channels and it appears the forgery could have only been discovered at Acrometal when Acrometal reconciled the bank statement. It also appears that the unauthorized signature may have been ratified when Acrometal assented to the signature by its conduct. Minn. Stat. § 336.3–404(1) states:

Any unauthorized signature is wholly inoperative as that of the person whose name is signed unless the named person ratifies it or is precluded from denying it * * *.

When a person performs a nonbinding act alleging it is on behalf of a principal and the principal's conduct is as though it originally authorized the act, the act becomes binding and is considered ratified. Restatement (Second), Agency § 82 (1958).

M.S.A. § 336.3–404 U.C.C. comment 4 notes that there is also a possibility of estoppel based on a representation that a signature is genuine or is a result of the negligence of the person who signed. If Acrometal's signature does not appear on the check, under Minn.Stat. § 336.3–401(1) (1990) Acrometal probably would not be liable on that instrument. However, to be properly litigated, American Bank should be brought in as a third party. If Acrometal were found negligent, it could be estopped from asserting a cause of action against First Bank and, consequently, American Bank as a third-party defendant. *See* M.S.A. § 336.3–404 U.C.C. comment 4.

American Bank argues that, because Broadmarkle was given responsibility for both accounts payable and bank statement reconciliation, Acrometal was negligent. While Minnesota has not previously addressed this issue, we find that, if the facts show Acrometal was negligent, this negligence would substantially contribute to the making of the unauthorized signature. If American Bank acted in good faith in using commercially reasonable standards, then American Bank would not be liable. The record before us, however, does not show whether American acted in good faith and in a commercially reasonable manner. This is a material fact question not resolvable here by summary judgment.

■ Second, U.C.C. § 3–405 is also an exception to the general rule that forged endorsements are ineffective to pass title. Minn.Stat. § 336.3–405 provides:

(1) An endorsement by any person in the name of a named payee is effective if

(a) an impostor by use of the mails or otherwise has induced the maker or drawer to issue the instrument to the imposter or a confederate in the name of the payee; or

(b) a person signing as or on behalf of a maker or drawer intends the payee to have no interest in the instrument; or

(c) an agent or employee of the maker or drawer has supplied the maker or drawer with the name of the payee intending the latter to have no such interest.

(2) Nothing in this section shall affect the criminal or civil liability of the person so endorsing.

Under this section, a forgery by a person authorized to sign for the maker is "effective." In the U.C.C. comment to M.S.A. § 3–405(1)(b), examples are given of effective endorsements.

The drawer makes the check payable in the name of P. A person named P exists, but the drawer does not know it.

M.S.A. § 336.3–405 U.C.C. comment 3(b). This is the case here. Acrometal, through Broadmarkle, made checks payable to companies in which Broadmarkle had an interest. The companies existed, but Acrometal did not know it. Therefore, it appears the endorsement is effective.

If the endorsement is "effective" under Minn.Stat. § 336.3–405, then American Bank became a holder in due course and is not liable. Again, the record lacks the checks in question. Therefore, there are material fact questions concerning the endorsement, and summary judgment is inappropriate.

■ Third, American Bank argues Acrometal's action is barred by Minn.Stat. § 336.4–103. Acrometal argues the reason for its loss was that American Bank failed to stamp the checks. American Bank argues that, even if it had stamped the checks, it would have been unable to discover the scheme. The trial court held American Bank may not assert a defense under Minn.Stat. § 336.4–103 because Acrometal was not an American Bank customer. Minn.Stat. § 336.4–103 provides:

(3) Action or nonaction approved by this article or pursuant to federal reserve regulations or operating letters constitutes the exercise of ordinary care and, in the absence of special instructions, action or nonaction consistent with clearinghouse rules and the like or with a general banking usage not disapproved by this article, prima facie constitutes the exercise of ordinary care.

(4) * * * The specification or approval of certain procedures by this article does not constitute disapproval of other procedures which may be reasonable under the circumstances.

Unlike Minn.Stat. § 336.4–406, section 336.4–105 does not specify whether it is only available as a defense to the payor bank. In absence of wording limiting this section, we hold that Minn.Stat. § 336.4–105 is available to American Bank as a defense in a third-party proceeding.

It is unclear if American Bank acted within "general banking usage not disapproved by this article," or according to Federal Reserve regulations or operating letters. Consequently, it appears that Minn.Stat. § 336.4–103 may be available to American Bank as a defense. Again, this is a material fact question to be determined by the trier of fact.

4. American asserts Acrometal did not comply with Minn.R.Civ.P. 56.05, which provides:

Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.

The key here is that the checks have not been produced. This is at the center of the

dispute. It does not appear, therefore, that the supporting documents required for summary judgment have been provided. Acrometal did not meet its burden under Minn.R.Civ.P. 56.05. Summary judgment, therefore, should have been denied.

## DECISION

We hold that Acrometal cannot sue American Bank directly, but First Bank can implead American Bank as a third-party defendant. We also hold that the affirmative defenses set out in Minn.Stat. § 336.4–406 apply only to the payor bank and its customer. Therefore, Minn.Stat. § 336.4–406 is unavailable to American Bank as a depositary/collecting bank. American Bank does have the affirmative defenses available under Minn.Stat. §§ 336.3–405, 336.3–406 and 336.4–103(3) as a third-party defendant.

In the interests of judicial economy, First Bank shall have 90 days from the release of this opinion to implead American Bank as a third party. All other time computations shall also be made from the date of release of this opinion as if First Bank had been served with a summons and complaint on that day. We reverse and remand with directions to the trial court to proceed consistent with this opinion.

Reversed and remanded.