IXI LABORATORIES, INC.,
Appellant (C5–91–1883),

Qwix Media Shops & Depots, Inc.,
Appellant (C7–91–1884),

v.

FIRST BANK NATIONAL ASSOCIA-
TION, f/k/a First National Bank
of Minneapolis, Respondent.

Nos. C5–91–1883, C7–91–1884.

Court of Appeals of Minnesota.

March 31, 1992.

Review Denied May 21, 1992.

John F. Bonner, III and David A. Oren-
stein, Parsinen Bowman & Levy, Minne-
apolis, for appellants.

Jerome A. Miranowski and Shannon M.
O'Toole, Oppenheimer Wolff & Donnelly,
Minneapolis, for respondent.

Considered and decided by PETERSON,
P.J., and NORTON, and STONE *, JJ.

* Retired judge of the district court, acting as
judge of the Court of Appeals by appointment
pursuant to Minn. Const. art. VI, § 2.

## OPINION

NORTON, Judge.

Appellants IXI Laboratories, Inc. and Qwix Media Shops & Depots, Inc. challenge the trial court's grant of summary judgment in favor of respondent First National Bank. We affirm in part, reverse in part and remand to the trial court.

## FACTS

Appellants IXI Laboratories, Inc. ("IXI Labs") and Qwix Media Shops & Depots, Inc. ("Qwix Media") were borrowers on a line of credit from First National Bank ("Bank") and also had checking accounts with Bank. At the time the line of credit and the checking accounts were established, certain of appellants' officers were authorized to make withdrawals.

In late 1986, appellants were unable to meet payment demands by Bank. In February 1987, Bank sold the note evidencing the line of credit, including the security interests, to third-parties Fletcher and McNamara. Fletcher and McNamara strictly foreclosed the note by changing the locks at the business locations and prohibiting appellants from entering the premises. Some of appellants' employees then entered the premises with the consent of Fletcher and McNamara and started operating the businesses for the new owners.

On February 10, 1987, Bank received certificates of corporate authority that purported to give third-parties Grambart and Clark authority to withdraw funds from appellants' accounts with Bank. Grambart was appellants' secretary and Clark was appellants' CEO. Grambart had previously written checks on appellants' accounts. Grambart and Clark wrote checks drawn on appellants' accounts payable to Qwix, Inc. and IXI, Inc., new corporations established by Fletcher and McNamara. The effect of these transactions was to withdraw the funds from appellants' accounts and deposit them with the new corporations under the control of Fletcher and McNamara.

Appellants initiated this action to recover amounts improperly paid by Bank claiming that Clark and Grambart were no longer appellants' employees and therefore had no authority to withdraw the funds from their accounts. Appellants further alleged that Bank knew or should have known that Clark and Grambart lacked authority to withdraw the funds from their accounts. Bank joined Fletcher, McNamara, Qwix, Inc., IXI, Inc., Clark and Grambart (the "payees") as third-party defendants.

After judgment in a related action where the rights of appellants and the payees to other corporate assets were decided, appellants and the payees reached a settlement agreement which included the following indemnity provisions:

(a) In the event that [the payees] are joined as third-party defendants or otherwise in any action commenced by [appellants] against any bank or any other party in connection with certain check endorsements or any other disputes arising out of or based upon the facts out of which this dispute arose and judgment is entered against [the payees] based upon such third-party complaint, [appellants] will not undertake to execute or otherwise collect or assign any such judgment against [the payees]. The parties agree and intend that this provision shall have an effect similar to a *Perringer*-type release for the benefit of [the payees].

In other words, the parties agree that in any existing or future action arising out of or based upon the facts out of which this dispute arose: (1) [appellants] shall release [the payees] from such actions and any liability attributable to [the payees'] actions or inactions; (2) to allow a reservation of [appellants'] claims against third parties while indemnifying [the payees] from any claims of contribution or indemnity made by said third parties; (3) [appellants] will satisfy any judgment against [the payees] obtained by said third party wherein [the payees] are liable for contribution or indemnification as a result of an action commenced by Defendants.

## ISSUES

I. Did the trial court err in ruling that appellants could not recover from Bank under Minn.Stat. § 336.4–407?

II. Did the trial court err in granting summary judgment in favor of Bank where appellants raised a genuine issue of material fact regarding separate claim that Bank acted in bad faith?

III. Did the trial court err by granting summary judgment without addressing issue of disputed account proceeds of $2136.20 where genuine issue of material fact exists regarding ownership of account?

## ANALYSIS

On appeal from summary judgment, this court:

determines whether there are any genuine issues of material fact and whether the trial court erred in its application of the law.

*Hubred v. Control Data Corp.*, 442 N.W.2d 308, 310 (Minn.1989) (citation omitted).

[T]he reviewing court "must take a view of the evidence most favorable to the one against whom the motion was granted."

*City of Virginia v. Northland Office Properties*, 465 N.W.2d 424, 427 (Minn. App.1991) (citation omitted), *pet. for rev. denied* (Minn. Apr. 18, 1991).

### I.

The trial court granted summary judgment for Bank after concluding that appellants could recover nothing. The trial court held that application of Minn.Stat. § 336.4–407 and the indemnity agreement resolved appellants' claims for reimbursement from Bank. This resolution of a summary judgment motion is acceptable. *See* Minn.R.Civ.P. 12.02, 56.03; *Kronzer v. First Nat'l Bank*, 305 Minn. 415, 429–30, 235 N.W.2d 187, 195–96 (1975) (summary judgment proper where indemnity agreement makes litigation fruitless).

The relevant statute provides:

If a payor bank has paid an item over the stop payment order of the drawer or maker or otherwise under circumstances giving a basis for objection by the drawer or maker, to prevent unjust enrichment and only to the extent necessary to prevent loss to the bank by reason of its payment of the item, the payor bank shall be subrogated to the rights

(a) of any holder in due course on the item against the drawer or maker; and

(b) of the payee or any other holder of the item against the drawer or maker either on the item or under the transaction out of which the item arise; and

(c) of the drawer or maker against the payee or any other holder of the item with respect to the transaction out of which the item arose.

Minn.Stat. § 336.4–407 (1986).

■■■■ Appellants argue that the facts of this case are not controlled by section 336.4–407 because Bank benefitted from the transaction and/or because there was no unjust enrichment. Alternatively, appellants argue that if section 336.4–407 applies, Bank can only be subrogated to the rights of a drawer or maker, and that appellants were not drawers or makers because the signatures were not authorized. We disagree. Appellants were the drawers or makers, in the language of this statute, by virtue of their ownership of the accounts, and a payor bank *shall* be subrogated to the rights of a drawer against a payee.

As the comment to this section explains:

This section applies only to a payor bank, and only to situations in which such bank has paid an item when it should not have done so—i.e. when payment had been stopped, or the item was altered *or contained an unauthorized signature,* or the bank had knowledge of the customer's legal incompetence or death, etc. In such situations the item is ordinarily not properly chargeable to the *customer* and if charged, he ordinarily has a basis for objection and a right to reimbursement by the bank. * * * In other cases, the *customer* has rights (e.g. for fraud) against the person who obtained the item from him and collected on it from the bank.

In such cases, even though the bank has improperly paid the item such payment should not unjustly benefit *either the customer or others at the bank's*

*expense,* and the bank is entitled to invoke the principle of subrogation in order to prevent them from benefiting unjustly from its payment.

Minn.Stat.Ann. § 336.4–407 Minn. code cmt. (West 1966) (emphasis added).

■ Furthermore, the statute applies to "loss to the bank by reason of its payment of the item." Minn.Stat. § 336.4–407. If Bank pays the payee and reimburses the drawer, Bank has suffered a loss by reason of its payment of the item. Appellants objected to the payments in this case and the section applies whenever a bank has made an objectionable payment.

In support of their argument that section 336.4–407 does not apply because appellants were not the drawers or makers of the checks, appellants also rely on *Dozier v. First Ala. Bank,* 363 So.2d 781 (Ala.Civ. App.1978). That case held that where a bank cashes a check drawn on a corporate account, signed by a corporate employee not authorized to write checks on the account, and where the bank had prior notice that the employee was not authorized, the bank is not subrogated to the rights of the corporation under U.C.C. § 4–407 because the corporation was not a drawer or maker. *Id.* at 784–85.

Respondent argues that *Dozier* is not controlling and points to other jurisdictions that have held otherwise. In *Acrometal Co. v. First Am. Bank,* 475 N.W.2d 487 (Minn.App.1991), *pet. for rev. denied* (Minn. Oct. 31, 1991), a corporate employee used a stamped facsimile signature to embezzle funds. *Id.* at 488–89. The court concluded that the corporate customer was the drawer. *Id.* at 490.

We hold that the trial court correctly applied Minnesota law in concluding that appellants were the drawers or makers. The trial court then concluded that:

the combination of [Bank's] subrogation rights arising pursuant to Minn.Stat. § 336.4–407 and the indemnification obligation arising from [the] * * * settlement agreement create a situation where * * * [appellants] will ultimately recover nothing.

The trial court's decision with respect to this issue is affirmed.

## II.

■ Appellants argue that there are genuine issues of material fact relating to separate tort claims that are not governed by Minn.Stat. § 336.4–407. Appellants claim that Bank tortiously interfered with their business by promoting the takeover by the payees. Appellants argue there are negligence issues for a jury to decide.

A bank can be liable in damages for failure to exercise ordinary care.

(3) Action or nonaction approved by this article or pursuant to federal reserve regulations or operating letters constitutes the exercise of ordinary care and, in the absence of special instructions, action or nonaction consistent with clearinghouse rules and the like or with a general banking usage not disapproved by this article, prima facie constitutes the exercise of ordinary care.

\*  \*  \*  \*  \*  \*

(5) The measure of damages for failure to exercise ordinary care in handling an item is the amount of the item reduced by an amount which could not have been realized by the use of ordinary care, *and where there is bad faith it includes other damages, if any,* suffered by the party as a proximate consequence.

Minn.Stat. § 336.4–103 (1986) (emphasis added).

■ Appellants claim Bank acted in bad faith because Bank knew that Clark and Grambart were no longer authorized to sign checks drawn on the accounts but that it honored the checks anyway. Although Bank is subrogated to appellants' claims against the payees if they wrongfully obtained the funds, appellants raise issues of material fact relating to damages resulting from their claim that Bank acted in bad faith.

This issue of bad faith is not resolved by section 336.4–407; it is governed by section 336.4–103. Therefore, the trial court erred in granting summary judgment dismissing appellants' claim that Bank acted in bad faith by honoring the checks while knowing

the payees were not entitled to the funds. Genuine issues of material fact remain as to what Bank knew when it paid the checks and whether appellants were damaged *separately* by Bank's actions. Appellants allege that Bank agreed to pay the payees the funds from appellants' accounts as part of a deal between Bank and the payees. Given this factual dispute regarding whether Bank acted in bad faith, summary judgment dismissing these claims was inappropriate. We reverse and remand this matter to the trial court for further consideration.

### III.

Bank erroneously argues that this issue is not reviewable because it was not before the trial court. Appellants pleaded this claim in their complaint. Bank admits it still holds the funds, awaiting a court order for disbursement.

The trial court did not address this claim when it granted Bank's motion for summary judgment. This matter is not governed by Minn.Stat. § 336.4-407, because Bank still retains the funds. Because there are genuine issues of material fact relating to ownership of this account, the trial court erred in granting summary judgment for Bank and dismissing this claim. We reverse and remand the matter to the trial court for consideration of this issue.

### DECISION

Appellants were drawers of the accounts in question and, because they agreed to indemnify the payees for any liability to Bank, which is subrogated to a drawer's rights under Minn.Stat. § 336.4-407, appellants can recover nothing from Bank on this claim. Genuine issues of material fact prohibit summary judgment on separate claims of bad faith. Disputed ownership of additional funds was not addressed by trial court and genuine issue of material fact precludes summary disposition of this claim.

*Affirmed in part, reversed in part and remanded.*