E.S.P., INC., Respondent,

v.

MIDWAY NATIONAL BANK OF ST. PAUL, Defendant and Third–Party Plaintiff, Petitioner, Appellant,

v.

FIRST BANK ROBBINSDALE, Third–Party Defendant, Respondent.

No. C5–88–1940.

Supreme Court of Minnesota.

Nov. 17, 1989.

Robert W. Murnane, Paul B. Kilgore, Murnane, Conlin, White, Brandt & Hoffman, St. Paul, for appellant.

John C. Thomas, A. Reid Shaw, Oppenheimer, Wolff & Donnelly, Minneapolis, for First Bank Robbinsdale.

Robert G. Share, Briggs and Morgan, Minneapolis, for E.S.P., Inc.

KELLEY, Justice.

E.S.P., Inc., one of two drawees of a check drawn on appellant, Midway National Bank of St. Paul (Midway), in this suit alleges that by remitting funds over a forged endorsement to the First State Bank of Robbinsdale (First Bank) for deposit to the account of the other drawee, Midway had converted funds belonging to E.S.P., Inc. Minn.Stat. § 336.3–419(1)(c) (1988). Midway commenced a third-party action against First Bank in which it alleges First Bank, as depositary and collecting bank, breached the warranty of title provided by Minn.Stat. § 336.4–207(1)(a)(i) (1988).[1] This appeal relates only to the third-party claim. Each bank moved for summary judgment against the other. The trial court concluded Midway's third-party claim was barred by Minn.Stat. § 541.05(1) (1988), Minnesota's six-year limitation statute applicable to contract claims, and entered judgment in favor of First Bank. A divided court of appeals affirmed. *E.S.P., Inc. v. Midway National Bank*, 437 N.W.2d 71 (Minn.App.1989), *pet. for rev. granted*, (Apr. 24, 1989). Because we hold that Midway's third-party claim is one seeking indemnity upon which the limitation statute does not commence to run against an indemnitee until it has sustained loss, we vacate the opinion of the court of appeals and remand to the trial court for further proceedings.

Barr and Nelson, Inc. maintained a checking account with Midway. On February 3, 1981, Barr and Nelson, Inc. issued a check for $30,000 payable to Mechanical Constructors and E.S.P. Heating as joint payees. That same day Mechanical Constructors deposited the check into its First Bank account. At the time of deposit, E.S.P., Inc.'s endorsement had apparently been forged on the back of the check. E.S.P., Inc.'s share of the $30,000 check was $17,600. On February 6, 1981, First Bank received payment of the $30,000 from Midway. E.S.P., Inc. claims it never received its portion of the proceeds.

More than four years later, on February 25, 1985, E.S.P., Inc. sent to Midway an affidavit of forgery. Upon receipt, Midway notified First Bank of the forgery claim and requested that First Bank remit to Midway the $17,600 claimed by E.S.P., Inc. First Bank disclaimed responsibility and failed to remit.

Nearly six years after Midway paid the check, on January 30, 1987, E.S.P., Inc. commenced this action against Midway. Its claim is based upon conversion under Minn.Stat. § 336.3–419(1)(c) (1988). Under Minnesota law, E.S.P., Inc. is prevented from suing First Bank directly even though First Bank was that bank which collected the check without verifying the endorsements. Minn.Stat. § 336.3–419(3) (1988) provides a depositary or collecting bank with defenses in a direct suit by a payee; it does, however, permit a payee, such as E.S.P., Inc., to sue the payor bank for conversion because it converted the check when it paid on a forged endorsement. Minn.Stat. § 336.3–419(1)(c) (1988).

Although Midway, as payor bank, may be liable for conversion, it, in turn, may look to First Bank, the collecting and depositary bank, for restitution. The warranty of good title automatically arises as part of the inter bank collection process. *See* footnote 1. All banks in the collection chain are liable if that warranty is breached, but only the initial collecting or depositary bank has a duty to check endorsements. 7 R. Anderson, *Anderson on the Uniform Commercial Code*, § 4–207:5 (3d ed. 1985). The purpose underlying the rule is to place the loss "upon the party who last dealt with the wrongdoer. This party

---

1. Minn.Stat. § 336.4–207(1)(a) reads:
   **WARRANTIES OF CUSTOMER AND COLLECTING BANK ON TRANSFER OR PRESENTMENT OF ITEMS; TIME FOR CLAIMS.**
   (1) Each customer or collecting bank who obtains payment or acceptance of an item and each prior customer and collecting bank warrants to the payor bank or other payor who in good faith pays or accepts the item that
   (a) it has a good title to the item or is authorized to obtain payment or acceptance on behalf of one who has a good title; * * *

is best able to prevent the conversion by carefully checking endorsements." *Stapleton v. First Sec. Bank*, 207 Mont. 248, 253, 675 P.2d 83, 86 (1983), *appeal after remand on other grounds*, 219 Mont. 323, 711 P.2d 1364 (1985); *see also Seattle–First Nat'l Bank v. Pacific Nat'l Bank*, 22 Wash.App. 46, 52, 587 P.2d 617, 622 (1978); *Nutt v. Chemical Bank*, 231 N.J.Super. 57, 62–63, 555 A.2d 8, 10 (App.Div.1989); *KOUS–TV v. Spot Time*, 599 F.Supp. 90, 92 (S.D.N.Y.1984). Therefore, First Bank, as the result of the warranty of title arising under Minn.Stat. § 336.4–207(1)(a), ultimately would be liable to Midway, the payor bank.

Because the Uniform Commercial Code places that ultimate responsibility for E.S.P., Inc.'s loss on First Bank, fourteen days after it had been sued by E.S.P., Inc., Midway served upon First Bank this third-party action.[2] In reply, First Bank argues that even though the Uniform Commercial Code saddles it with that responsibility, Midway's action is barred by the statute of limitations because it was commenced more than six years after the statutory warranty was breached.

■ The question in this case is *not* which statute of limitation is applicable; both parties concede that the six-year limitation statute (Minn.Stat. § 541.05(1) (1988)) applicable generally to contract actions is appropriate. The dispute between them relates to when that six-year limitation period commences to run. First Bank argues that Midway's claim is for a breach of warranty and, therefore, the statute commenced to run at the time of the breach (February 6, 1981). In contrast, Midway argues that its action is for indemnity for the loss it may sustain as the result of First Bank's breach of the statutory warranty of title. Because limitation statutes generally commence to run on indemnity claims at the time the indemnitee sustains a loss, and since Midway sustains no loss until it is compelled to pay E.S.P., Inc., the statute has not yet commenced to run. Ac-

cordingly, Midway asserts, its third party action is timely.

Both the trial court, when it granted First Bank summary judgment, and the court of appeals, when it affirmed that judgment, rejected Midway's argument. Both courts concluded that Midway's third-party action was premised on the breach of warranty, which, if it occurred at all, took place six years and six days before institution of this third-party action against First Bank. In so holding, both relied on *Trust Co. Bank v. State*, 420 So.2d 10, 13 (Ala. 1982), *appeal after remand on other grounds, Trust Co. Bank v. Bronner*, 451 So.2d 247 (Ala.1984), and, as well, upon secondary authorities which seemingly support their conclusion by, in turn, citing the holding in *Trust Co. Bank*. *See E.S.P. Inc.*, 437 N.W.2d at 73–74. Because they perceived the roles of the parties in the existent case to be substantially similar to those of the parties in *Trust Co. Bank*, both courts accepted as persuasive the reasoning employed by the Alabama court. But are the roles of the parties here sufficiently similar to those in *Trust Co. Bank?* We think not.

In *Trust Co. Bank*, the State of Alabama, drawer of pension checks, sued Trust Co. Bank, the collecting and depositary bank, which had paid the face amount of the checks on forged endorsements. In the absence of a specific statute of limitations in Alabama's version of the Uniform Commercial Code, the Alabama court in this direct action for breach of warranty applied Alabama's contract limitation statute. The State of Alabama made no claim by way of indemnity; its claim was for damages for breach of warranty. In that case the State of Alabama's claim matured when the defendant collecting bank breached the statutory warranty of title. It sustained an immediate loss, and it could have sued any time thereafter.

Here, Barr and Nelson, the drawer of the check, occupies the role filled by the State of Alabama in *Trust Co. Bank*. Had Barr

---

**2.** Albeit with considerable reluctance, we have felt compelled to require parties to follow this "round about" approach in resolving responsi-

bility for loss under the Uniform Commercial Code. *See, e.g., Denn v. First State Bank,* 316 N.W.2d 532, 536 (Minn.1982).

and Nelson sued First Bank for breach of the warranty of title six days beyond the expiration of the contract limitation period, its claim too, as was that of *Trust Co. Bank,* would be barred. But, here, Midway acts in a different role. It is the payor bank. Although under the Uniform Commercial Code Midway is entitled to be indemnified for any loss it sustains, its claim for indemnification does not ripen until it has sustained a loss—here, when it is compelled to pay E.S.P., Inc. The contingency giving rise to the indemnity claim does not occur until loss is experienced by the indemnitee. *See, e.g., Calder v. City of Crystal,* 318 N.W.2d 838, 841 (Minn.1982) (contribution case wherein rule cited); *Altermatt v. Arlan's Dep't Stores,* 284 Minn. 537, 538, 169 N.W.2d 231, 232 (Minn.1969) (indemnity).

Because of this dissimilarity in the roles of the parties and the rules of law prescribing the time within which each must assert its claim or the time barred, it appears to us the reliance of the courts below on *Trust Co. Bank* has been misplaced.

The court of appeals' majority opinion in the instant case opined that Midway received from E.S.P., Inc. in 1985 an affidavit of forgery and was put on notice of the potential claim, after which it could have commenced a declaratory judgment action against First Bank. Because it did not do so, the majority implied, though it did not specifically hold, that Midway cannot now complain if the six-year statute is now applied to bar its claim. *See E.S.P., Inc.,* 437 N.W.2d at 74. Although the assertion that a declaratory judgment action could have been maintained by Midway in 1985 is not completely free from doubt, even assuming

such an action could have then been asserted, we are inclined to agree with the dissenting court of appeals judge who pointed out that to require a payor bank, such as Midway, to commence suit before it has suffered a loss each time it receives an affidavit of forgery, although suit ultimately may never be brought against the bank for conversion, would create "an intolerable burden on banks." *Id.* at 75. (Forsberg, J., dissenting). Not only would such a requirement be burdensome on payor banks, but other banks as well in the collection chain who have not at the time of receiving the notice sustained a loss, or who may never sustain one as a result of the forged endorsement. It is likewise burdensome on the judicial system itself by imposing on it the processing of "litigation" which may never ripen into a case or controversy capable of judicial resolution. To employ a colloquialism, a rule requiring banks in the collection chain to take such precipitate action would be somewhat akin to "putting the cart before the horse." This we decline to do.

Actions seeking indemnity may arise out of contract. *Aetna Casualty & Sur. Co. v. Bros,* 226 Minn. 466, 33 N.W.2d 46 (1948). Because indemnity is equitable in nature, its application hinges upon particular facts of the controversy. *Zontelli & Sons v. City of Nashwauk,* 373 N.W.2d 744, 755 (Minn.1985).[3] In the instant case, the equities favor Midway. The Uniform Commercial Code specifically allocates the duty to discover forged endorsements, and the risk of loss for failure to do so, to the collecting or depositary bank. Midway seeks, and is entitled to, reimbursement for losses it sustains because of its conversion liability to E.S.P., Inc. To hold that the limitation

**3.** Illustrative of the equitable nature of the relief as being dependent upon the factual setting is *Leisure Dynamics v. Falstaff Brewing Corp.,* 298 N.W.2d 33 (Minn.1980). Leisure Dynamics sold personal property without collecting and remitting the sales tax. Subsequently, it was compelled to pay. Thereafter it sought from its vendee indemnification by suit. We noted that the equities seemed to favor Leisure Dynamics; it had paid the tax liability properly payable by the vendee, and, therefore, normally would be entitled to indemnification. However, due to the peculiar setting, we held it could not recover because the tax statute created a presumption a tax was due on all sales which Leisure Dynamics should have known, and that, therefore, to grant it indemnity relief, notwithstanding the expiration of the limitation statute, "flies in the face of the statutory presumption that a tax is due * * *." *Leisure Dynamics,* 298 N.W.2d at 38. The reason Leisure Dynamics was denied indemnification pivoted on the public policy ground that to so permit would circumvent the tax statute. No similar consideration is present in the instant case.

statute applicable to contract actions may bar a suit by a payor bank seeking indemnification under Minn.Stat. § 336.4-207 (1988), would, as a practical matter, result in overriding the risk of loss allocation addressed by the statute. Furthermore, a rule requiring payor banks, at the risk of later being barred by the statute of limitations, to commence declaratory judgment actions every time they receive an affidavit of forgery would be commercially unreasonable. Undoubtedly, it will rarely happen that payees of checks will wait six years before filing suit to recover money from payor banks for conversion under the Uniform Commercial Code. But if they do, we hold that the payor bank who seeks indemnity from the collecting and depositary bank, under Minn.Stat. § 336.4-207(1) (1988), is not barred by the statute of limitations because the statute on that claim does not commence running until the payor bank has sustained loss.

In doing so, however, we emphasize the narrow application of today's holding. It is limited to actions by payor banks, or other banks in the collection chain, for indemnity arising from the breach of the warranty of title under the Uniform Commercial Code, and is specifically designed to further a major purpose of that code—the development of consistent and commercially reasonable rules of law to govern commercial transactions. *See* 1 J. White & R. Summers, *Uniform Commercial Code* 21-22 (3d ed. 1988).[4]

Accordingly, we vacate the opinion of the court of appeals and the judgment of the

4. At oral argument counsel suggested that a holding, such as the one we adopt today, could extend liability of the collecting or depository bank for 12, or more, years after the breach of the statutory warranty of title. Admittedly, that would be theoretically possible. However, other legal precepts mitigate against that result. First of all, since indemnity is an equitable doctrine, the equitable doctrine of laches, which may be applicable, provided prejudice can be demonstrated, may limit such extended risk of liability. *See, e.g., Anderson v. First Nat'l Bank,* 303 Minn. 408, 413-14, 228 N.W.2d 257, 266 (1975) (discussing laches in a somewhat different context). Additionally, we note, without deciding, that a similar laches type defense may arise under Minn.Stat. § 336.4-207(4) (1988).

trial court, and remand to the trial court for resolution of other issues raised by the pleadings.

Normally, this section is applicable when a payor bank, such as Midway, learns of the fraudulent endorsement in time to prevent the collecting bank from paying the check, but fails to take steps to prevent the loss. Nonetheless, we are not presently aware of any other statutory or case law authority that would prevent a court, in the interest of resolving the equities, from utilizing this provision in support of a laches ruling. Finally, although we hold that a payor bank's indemnity claim may not be foreclosed simply because it failed to commence a declaratory judgment action upon receipt of an affidavit of forgery, today's decision does not prevent it from bringing such an action should it so choose.