**Audrey E. GELDERT, as trustee of Geldert's Woodcraft, Inc. Employees Pension Trust, Appellant,**

v.

**AMERICAN NATIONAL BANK, et al., Respondents.**

No. CX–93–510.

Court of Appeals of Minnesota.

Sept. 7, 1993.

Review Denied Nov. 16, 1993.

Ronald J. Walsh, Ronald J. Walsh, P.A., St. Paul, for appellant.

Edward W. Gale and Thomas C. Atmore, O'Neill, Burke, O'Neill, Leonard and O'Brien, Ltd., St. Paul, for respondents.

Considered and decided by HUSPENI, P.J., and PETERSON, and FLEMING,* JJ.

## OPINION

HUSPENI, Judge.

Pursuant to entry of a $5,000 judgment in favor of payee Geldert's Woodcraft, Inc. Employees Pension Trust, appellant Audrey E. Geldert, payee's trustee, contends the trial court erred in dismissing her direct conversion claims against a depositary bank and holding that a payee cannot directly sue a depositary or collecting bank under Minn. Stat. § 336.3–419 (1988). Appellant also claims the trial court erred in granting summary judgment on the breach of warranty of good title claim, assigned to payee by the payor bank in settlement of payee's conversion action against it, limiting damages under Minn.Stat. § 336.4–207 (1988) to the amount actually suffered by the payor bank. We affirm.

## FACTS

The facts in this case are not disputed. In 1983 and 1984, Geldert's Woodcraft, Inc. (drawer or Geldert's) issued three checks totalling $50,000 to Geldert's Woodcraft, Inc. Employees Pension Trust (payee). Each check was given to the drawer's financial advisor, C. Paul Fitzgerald, to deposit into payee's account at First Brookdale State

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

Bank, n/k/a Marquette Bank Brookdale (the payor bank).[1] Rather than deposit the checks into payee's account at the payor bank, Fitzgerald deposited the checks into an account under his control at respondent Commercial State Bank in St. Paul (the depositary bank).[2] The depositary bank presented the checks to respondent American National Bank (the collecting bank)[3] for collection. The collecting bank paid the depositary bank for each check and then presented the checks to the payor bank for collection.

The first check, dated May 19, 1983, was in the amount of $10,000; the second check, dated June 13, 1983, was in the amount of $15,000. Fitzgerald deposited the first and second checks into his account at the depositary bank on June 15, 1983, by endorsing the checks for deposit into account 047597, an account belonging to Twinsota Financial Services, a company controlled by Fitzgerald. Payee did not endorse either the first or second check in any manner. On June 15, 1983, the depositary bank presented both checks to the collecting bank for collection and received payment the same day. The collecting bank received payment of the first and second checks from the payor bank after it presented the checks on June 16, 1983.

The third check, dated May 23, 1984, was in the amount of $25,000. Fitzgerald deposited this check on May 23, 1984, into the account he controlled at the depositary bank. He endorsed the check by typing on it "Geldert's Woodcraft Employees Pension Trust * * * Pay to the order of Twinsota Financial Services." The endorsement also contained, in handwriting, "Tom Geldert, Trustee." The endorsement by Tom Geldert was forged.

In 1987, payee learned the United States was investigating Fitzgerald for mail fraud and theft through misappropriation of client funds. Fitzgerald was indicted and payee later discovered the three checks were presented for deposit under missing or forged endorsements.

Payee sued the payor bank and the collecting bank in May 1990, and settled its action against the payor bank on June 27, 1990. Pursuant to the settlement, payee received $5,000 and an assignment of any rights, claims, or causes of action that the payor bank had against the depositary and collecting banks. Payee then amended its complaint, asserting breach of warranty of good title claims against the depositary and collecting banks assigned to it from the payor bank and adding three direct conversion claims against the depositary bank.

The trial court dismissed two of payee's three conversion claims under Minn.R.Civ.P. 12 on the basis the claims were time-barred by the applicable six-year statute of limitations contained in Minn.Stat. § 541.05 (1988).[4] The trial court later dismissed payee's third direct conversion claim against the depositary bank, and held that a payee cannot directly sue a depositary or collecting bank under Minn.Stat. § 336.3–419 (1988).

The trial court granted the summary judgment motions of the collecting and depositary banks to limit breach of warranty of good title damages, and held that payee's breach of warranty claims against the depositary and collecting banks were indemnification claims and thus damages were limited to $5,000 under Minn.Stat. § 336.4–207(3) (1988). These were the actual damages incurred by the payor bank, rather than the face value of the instruments.

1. A "payor bank" is a bank by which an instrument for the payment of money is payable as drawn or accepted. Minn.Stat. § 336.4–105(b) (1988).

2. A "depositary bank" is the first bank to which an instrument for the payment of money is transferred for collection even though it is also the payor bank. Minn.Stat. § 336.4–105(a) (1988).

3. A "collecting bank" is any bank handling an instrument for the payment of money for collec-

tion except the payor bank. Minn.Stat. § 336.4–105(d) (1988). Under the facts of this case, both American National Bank and Commercial State Bank in St. Paul are collecting banks. For purposes of clarity, however, only American will be referred to as the collecting bank. Commercial will be referenced as the depositary bank.

4. Appellant does not challenge the trial court's dismissal of these two claims as time-barred.

## ISSUES

1. Did the trial court err in holding that under Minn.Stat. § 336.3–419 (1988) a payee cannot directly sue a depositary or collecting bank for conversion of instruments containing forged or missing endorsements?

2. Did the trial court err in holding that breach of warranty damages under Minn. Stat. § 336.4–207(3) (1988) were limited on principles of indemnification to the amount paid by the payor bank to payee in settlement of payee's claims against it, rather than the face amount of the instruments?

## ANALYSIS

### I.

 Payee contends the trial court erred in dismissing its conversion claim asserted directly against the depositary bank. *See* Minn.R.Civ.P. 12.02(e). In reviewing a case dismissed for failure to state a claim upon which relief can be granted, a reviewing court must only determine whether the complaint sets forth a legally sufficient claim for relief. *Elzie v. Commissioner of Pub. Safety,* 298 N.W.2d 29, 32 (Minn.1980). A claim prevails against a motion to dismiss if it is possible on any evidence which might be produced, consistent with the pleader's theory, to grant the relief demanded. *Northern States Power Co. v. Franklin,* 265 Minn. 391, 395, 122 N.W.2d 26, 29 (1963). The only issue this court must address, therefore, is whether a payee can assert a direct conversion claim against a depositary bank under Minn.Stat. § 336.3–419 (1988).[5]

 We conclude that under Minnesota case law interpreting section 339.3–419 and the legislature's amendment of the conversion provision in 1992, recodified as Minn.

Stat. § 336.3–420 (1992), a payee cannot directly sue a depositary bank for conversion.

The Minnesota Supreme Court, in *Denn v. First State Bank,* 316 N.W.2d 532, 537 (Minn.1982), held that Minn.Stat. § 336.3–419(3) (1980) provides a collecting or depositary bank with defenses that absolve the collecting or depositary bank of liability to a payee for conversion. In *Denn,* when the drawer issued two checks to payee, a former employee of payee deposited the checks with an incomplete endorsement into an account in the name of both payee and the employee. The depositary bank presented and received collection of the check from the payor bank. *Id.* at 533. The sole shareholder of payee sued the payor bank and the depositary bank for conversion. Under Minn.Stat. § 336.3–419(3), a jury found that the depositary bank acted in accordance with reasonable commercial standards in accepting the checks for deposit and denied payee's conversion claim against the depositary bank. *Id.* at 534. On appeal, the *Denn* court noted that although Article 3 of the Uniform Commercial Code contemplates conversion actions, no provision expressly governs suits by a payee against a depositary bank. *Id.* The court interpreted Minn.Stat. § 336.3–419(3) and its comments as appearing "to exclude [depositary banks] from liability." *Id.* at 536. In discussing the circuitous manner in which a payee must sue for conversion of an instrument with a forged endorsement, the court noted that it would be "judicially efficient to allow the true payee to proceed directly against a collecting bank." *Id.* at 537.

> If the payee must sue the drawee bank, the drawee bank will sue the collecting bank on the warranties of Minn.Stat. § 336.4–207 as [the payor bank] did in this case. Therefore, "a suit by the owner-payee against the depositary bank avoids

---

5. The conversion of an instrument provision of Article 3 provides, in part, as follows:

(1) An instrument is converted when

 * * * * * *

(c) it is paid on a forged endorsement.

(2) * * * In any * * * action [other than an action against a drawee] under subsection (1) the measure of liability is presumed to be the face amount of the instrument.

(3) Subject to the provisions of this chapter concerning restrictive endorsements a *repre-*

*sentative, including a depositary or collecting bank, who has in good faith and in accordance with the reasonable commercial standards applicable to the business of such representative dealt with an instrument or its proceeds on behalf of one who was not the true owner is not liable in conversion* or otherwise to the true owner beyond the amount of any proceeds remaining in its hands.

Minn.Stat. § 336.3–419 (1988) (emphasis added).

an additional suit and thus resolves the entire dispute in a more economical manner."

*Id.* (quoting J. White & R. Summers, *Uniform Commercial Code* 590 (2d ed. 1980)). The court refused, however, to alter the clear intent of Minn.Stat. § 336.3–419(3):

> Although the people of Minnesota would benefit by a change which would hold a depositary bank directly liable to the true payee of a check which it has paid over a forged indorsement, we hold that Minn. Stat. § 336.3–419(3), as it was passed by the legislature in 1965, provides defenses which absolve the depositary bank of such liability.

*Id.*

Although *Denn* did not explicitly prohibit a payee from directly suing a depositary or collecting bank for conversion,[6] *Denn* has been so interpreted. In *E.S.P., Inc. v. Midway Nat'l Bank*, 447 N.W.2d 882, 883 (Minn. 1989), the supreme court, by dictum, stated that a payee may not assert a direct conversion claim against a depositary or collecting bank.

> *Under Minnesota law, [payee] is prevented from suing [the depositary bank for conversion] directly even though [the depositary bank] was that bank which collected the check without verifying the endorsements.* Minn.Stat. § 336.3–419(3) (1988) provides a depositary or collecting bank with defenses in a direct suit by a payee; it does, however, permit a payee * * * to sue the payor bank for conversion

because it converted the check when it paid on a forged endorsement.

*Id.* (emphasis added).[7]

■ The Minnesota legislature's enactment of revised Articles 3 and 4 of the Uniform Commercial Code in 1992 also supports our holding that under Minn.Stat. § 336.3–419, a payee is not permitted to assert a conversion claim directly against a depositary or collecting bank. Generally, this court must presume that the legislature intended an amendment to effect a statutory change. *Brotherhood of Ry. & S.S. Clerks, Freight Handlers, Exp. & Station Emps., Lodge 364 v. State by Balfour*, 303 Minn. 178, 195, 229 N.W.2d 3, 13 (1975).

The 1992 amendments recodified the conversion provision in Minn.Stat. § 336.3–420 (1992). That provision now states:

> (a) The law applicable to conversion of personal property applies to instruments. An instrument is also converted if it is taken by transfer, other than a negotiation, from a person not entitled to enforce the instrument or a bank makes or obtains payment with respect to the instrument for a person not entitled to enforce the instrument or receive payment. *An action for conversion of an instrument may not be brought by (i) the issuer or acceptor of the instrument or (ii) a payee or endorsee who did not receive delivery of the instrument either directly or through delivery to an agent or a copayee.*

> (b) In an action under subsection (a), the measure of liability is presumed to be the amount payable on the instrument, but

---

**6.** In *Denn v. First State Bank*, 316 N.W.2d 532, 534 (Minn.1982), the court noted that the depositary bank, did "not claim that the U.C.C. prohibits [the payee] from bringing this [conversion] action." The supreme court, therefore, did not rule on an issue not before it, a position it has taken on other occasions. In *AFSCME Council 96 v. Arrowhead Regional Corrections Bd.*, 356 N.W.2d 295 (Minn.1984), the court considered whether an employee threatened with discharge from the corrections board had a right to both a Veterans Preference Hearing under Minn.Stat. § 197.46 (1982) and arbitration under a collective bargaining agreement. The court did not address whether the corrections board could be a "political subdivision" of the state under the Veterans Preference Act even though the board had no power to tax, because neither party asked

the court to address that issue. *See Winberg v. University of Minnesota*, 485 N.W.2d 325, 331 (Minn.App.1992) (Huspeni, J., dissenting), *rev'd* 499 N.W.2d 799, 802–03 (Minn.1993) (holding that the university was not a "political subdivision" of the state because it had no power to tax or cause taxes to be levied).

**7.** In a third case, *Acrometal Cos. v. First Am. Bank*, 475 N.W.2d 487, 490 (Minn.App.1991), *pet. for rev. denied* (Minn. Oct. 31, 1991), the party alleging conversion was the drawer, not the payee. Nonetheless, the court, consistent with *Denn* and *E.S.P.*, held that the plaintiff could not assert a direct action against a depositary or collecting bank.

recovery may not exceed the amount of the plaintiff's interest in the instrument.

(c) A representative, other than a depositary bank, who has in good faith dealt with an instrument or its proceeds on behalf of one who was not the person entitled to enforce the instrument is not liable in conversion to that person beyond the amount of any proceeds that it has not paid out.

Minn.Stat. § 336.3–420 (emphasis added). The prefatory note of the National Conference of Commissioner on Uniform State Laws states that revised Article 3 provides a number of benefits to users, such as

> [s]ection 3–420 [that] allows a person whose indorsement is forged to sue the depositary bank directly, rather than each [payor bank] of the checks involved.

Minn.Stat.Ann. ch. 336, art. 3 prefatory note (West Supp.1993). A new comment additionally provides:

> Subsection (3) of former Section 3–419 drew criticism from the courts, that saw no reason why a depositary bank should have the defense stated in the subsection. The depositary bank is ultimately liable in the case of a forged indorsement check because of its warranty to the payor bank * * * and it is usually the most convenient defendant in cases involving multiple checks drawn on different banks. *There is no basis for requiring the owner of the check to bring multiple actions against the various payor banks and to require those banks to assert warranty rights against the depositary bank. In revised Article 3, the defense provided by Section 3–420(c) is limited to collecting banks other than the depositary bank. If suit is brought against both the payor bank and the depositary bank, the owner, of course, is entitled to but one recovery.*

Minn.Stat.Ann. § 336.3–420 cmt. 3 (West Supp.1993) (citations omitted) (emphasis added). Section 336.3–420 clears up the confu-

sion created by former section 336.3–419, which did not specifically indicate to whom a depositary or collecting bank might be liable if it failed to act in good faith or in accordance with reasonable commercial standards. Minn.Stat. § 336.3–420 now expressly identifies those persons or entities who cannot maintain a conversion action against a depositary or collecting bank.

■ Revised Article 3 has no application to this case. Here, the conversion of the instruments occurred in 1984 and the suit was commenced before August 1, 1992, the effective date of Minn.Stat. § 336.3–420. *See* 1992 Minn.Laws, ch. 565 (no effective date specified); Minn.Stat. § 645.02 (1992) ("Each act * * * enacted finally at any session of the legislature takes effect on August 1 next following its final enactment, unless a different date is specified in the act"). Furthermore, statutes are presumed to have no retroactive effect unless the legislature clearly and manifestly intended such application. Minn.Stat. § 645.21 (1992); *Krause v. Merickel,* 344 N.W.2d 398, 402 (Minn.1984). Nothing in the new statutory language or the comments indicates that the legislature intended Minn.Stat. § 336.3–420 to apply retroactively. Therefore, the amendatory laws provision of Minn.Stat. § 645.31 (1992) applies. *Haluptzok v. Peyton,* 355 N.W.2d 751, 753 (Minn.App.1984). Section 645.31 provides that "new provisions shall be construed as effective only from the date when the amendment became effective." Minn.Stat. § 645.31, subd. 1.

We believe we are compelled under *Denn* and *E.S.P.* to reach the result we do, although we recognize that virtually all other jurisdictions typically preserve a payee's common law right to directly sue a depositary bank for conversion of an instrument paid on a forged or missing endorsement.[8] *See* Barbara Singer, *Uniform Commercial Code Section 3–419 and the Battle to Preserve a Payee's Right to Sue Directly a Depositary or Collecting Bank that Pays on*

---

**8.** *E.g., Van Lunen v. State Cent. Sav. Bank,* 751 F.Supp. 145, 148 (S.D.Iowa 1990) (co-payee recovered directly from depositary bank which failed to act in accordance with reasonable standards in accepting an instrument with an incomplete endorsement); *Matco Tools Corp. v. Pontiac*

*State Bank,* 614 F.Supp. 1059, 1062 (D.C.Mich. 1985) (Michigan U.C.C. law permits a direct action by a payee against a depositary bank which forwarded an instrument with a forged endorsement for collection).

a *Forged Indorsement,* 15 Seton Hall Legis. J. 39, 68 (1991). Singer noted that:

> From the very start, the courts struggled with the complexity of [interpretation of section 3–419]. Surprisingly, despite the express language of the statute, the courts have come to construe section 3–419 in a manner that, for the most part, preserves the payee's traditional right to bring an action, in tort or in contract, against a depositary or collecting bank that pays over a forged indorsement.

*Id.*

An August 1, 1992, amendment to section 336.3–420 brings Minnesota into harmony with the states that have ruled on this issue. However, we believe the trial court correctly determined that Minn.Stat. § 336.3–419(3), in effect when the transactions at issue here occurred, does not allow payee to directly sue the depositary or collecting banks for conversion. The complaint failed to state a claim upon which relief could be granted, and the trial court properly dismissed the conversion claim. *See Elzie,* 298 N.W.2d at 32.

## II.

■ Appellant argues the trial court erred in granting summary judgment to limit breach of warranty of good title damages, on indemnification principles, to $5,000, the amount suffered by the payor bank, rather than the face amount of the instruments. This court, when reviewing a summary judgment order, must determine whether any genuine issues of material fact exist and whether the trial court erred in its application of the law. Minn.R.Civ.P. 56.03; *Offerdahl v. University of Minn. Hosps. & Clinics,* 426 N.W.2d 425, 427 (Minn.1988). However, we need not defer to the trial court's decision regarding a legal issue. *Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n,* 358 N.W.2d 639, 642 (Minn.1984). Here, the essential facts are undisputed, and the sole issue on appeal is whether the trial court properly limited breach of warranty damages to $5,000. We conclude that it did.

The breach of warranty of good title provision in Article 4 provides:

> (1) Each customer or collecting bank who obtains payment or acceptance of an item and each prior customer and collecting bank warrants to the payor bank or other payor who in good faith pays or accepts the item that
>
>> (a) it has a *good title* to the item * * *; and
>>
>> (b) it has no knowledge that the signature of the maker or drawer is *unauthorized* * * *;
>>
>> (c) the item has not been materially altered.

Minn.Stat. § 336.4–207 (1988) (emphasis added). The "presentment warranty" arises automatically as part of the inter-bank collection process. *E.S.P.,* 447 N.W.2d at 883. In *E.S.P.,* the court stated that all banks in the collection chain are liable if the warranty of good title is breached, but only the initial collecting or depositary bank has a duty to verify endorsements. *Id.* (citing 7 Ronald A. Anderson, *Anderson on the Uniform Commercial Code,* § 4–207:5 (3d ed. 1985)). This rule places the loss upon the bank that dealt with the wrongdoer and is best able to prevent conversion by carefully checking endorsements. *Id.* at 883–84.

Payee, when it settled its conversion claim against the payor bank for $5,000, acquired the payor bank's breach of warranty claims against the depositary and collecting banks. The assignment of rights provided:

> As part of the consideration stated above [$5,000], [the payor bank] hereby assigns to the [payee] all of its right, title and interest in and to any claim or cause of action, including without limitation *any right of indemnification or claim for breach of warranty* * * * arising out of the conversion or wrongful payment of the Checks.

(Emphasis added.) The trial court determined that in attempting to circumvent the circuitous litigation required by *Denn* and *E.S.P.,* payee placed itself in the position of the payor bank asserting a $5,000 claim of indemnification against the depositary and collecting banks for breach of warranty. We agree with the trial court.

■ A "valid assignment generally operates to vest in the assignee the same right,

title, or interest that the assignor had in the thing assigned." *State ex rel. Southwell v. Chamberland*, 361 N.W.2d 814, 818 (Minn. 1985). In effect, an assignee stands in the shoes of the assignor. *Marquette Appliances, Inc. v. Economy Food Plan, Inc.*, 256 Minn. 169, 173, 97 N.W.2d 652, 655 (1959). Under *E.S.P.*, a payor bank's breach of warranty claim against a depositary or collecting bank is for indemnification and limited to the loss actually incurred. *E.S.P.*, 447 N.W.2d at 885. The doctrine of indemnity is based upon the idea that when one is compelled to pay money which in justice another ought to pay, the former may recover of the latter the amount actually paid unless barred by the former's wrongful conduct. *Lunderberg v. Bierman*, 241 Minn. 349, 354, 63 N.W.2d 355, 359 (1954).

The payor bank incurred a $5,000 expense in settling payee's conversion claim against it. Under the procedures enunciated in *Denn* and *E.S.P.*, the payor bank could have sought indemnification in the amount of $5,000 against the depositary and collecting banks for breach of warranty under Minn. Stat. § 336.4–207. Payee, standing in the shoes of the payor bank, cannot be in a better position than payor bank itself. *See Southwell*, 361 N.W.2d at 818. While this result may seem draconian because payee, the truly injured party, has suffered a loss far in excess of $5,000, payee nonetheless voluntarily settled its conversion claim for one-tenth the face value of the instruments converted. Although payee may have believed that this settlement would facilitate the attempt to circumvent the barriers preventing direct suit against depositary or collection banks, the settlement, in effect, resulted in limiting payee's damages to $5,000, the amount actually suffered by the payor bank.

■ Payee also argues that pursuant to Minn.Stat. § 336.4–207(3) (1988) it is entitled to recover all damages suffered. We disagree. Section 336.4–207(3) provides:

> Damages for breach of such warranties * * * shall not exceed the consideration received by the customer or collecting bank responsible plus finance charges and expenses related to the item, if any.

Although this provision enumerates the maximum limit recoverable by a party injured from a breach of warranty of good title, it does not establish a presumption that the amount payable under the instrument is the amount of damage for such a breach. If the face value of the instruments was presumed to be the amount of damages for breach of warranty, damages would ripen when a breach occurs. This could contradict the holding in *E.S.P.* that a payor bank's claim for indemnification does not ripen until the payor bank has suffered a loss. *E.S.P.*, 447 N.W.2d at 885. We conclude that the trial court's summary judgment limiting breach of warranty damages was not based on an error in the application of the law. *See Offerdahl*, 426 N.W.2d at 427.

## DECISION

The trial court properly dismissed payee's direct conversion claim asserted against the depositary bank and properly limited breach of warranty of good title damages to the amount actually suffered by the payor bank.

*Affirmed.*