The **AMERICAN PARKINSON DISEASE ASSOCIATION, INC.,** a New York not for profit corporation, Appellant,

v.

The **FIRST NATIONAL BANK OF NORTHFIELD,** Respondent.

No. C5–98–515.

Court of Appeals of Minnesota.

Oct. 6, 1998.

Dan T. Ryerson, Gislason, Martin & Varpness, P.A., Edina, (for appellant).

Todd A. Sattler, Joseph A. Nilan, Lang, Pauly, Gregerson & Rosow, Ltd., Minneapolis, (for respondent).

Considered and decided by SCHUMACHER, P.J., SHORT and DAVIES, JJ.

## OPINION

DAVIES, Judge.

The American Parkinson Disease Association challenges the district court's grant of summary judgment in favor of First National Bank of Northfield, arguing that the bank, by accepting unendorsed stolen checks, became liable for conversion. We affirm.

## FACTS

In early 1988, Frank Williams, then National Director for appellant American Parkinson Disease Association, Inc. (APDA), designed a scheme to embezzle money from his employer. Williams asked Michael Monnot, an APDA volunteer and fund-raiser living in Northfield, to set up a bank account for a proposed Northfield APDA chapter. Monnot set up the account with respondent First National Bank of Northfield (Bank). Williams then began sending Monnot APDA donor checks Williams had stolen, asking Monnot to deposit them in the account. Monnot, believing the funds were being used to support Parkinson patients in nursing homes, sent checks or money orders written on the account back to Williams, never questioning the propriety of the transactions. During the next seven years, Williams embezzled more than $1 million from APDA, using the account in the Northfield bank. Williams' embezzlement scheme was discovered shortly after he resigned in April 1995.

In September 1995, APDA sued the Bank, alleging conversion and negligence. All claims were based on the check deposits; the withdrawals were not challenged. When discovery was complete, the Bank moved for summary judgment. The district court granted the Bank's motion and dismissed APDA's complaint with prejudice. The court denied a motion for partial summary judgment by APDA. This appeal followed.

## ISSUES

I. As to deposits made before August 1, 1992, is the Bank liable for conversion under Minn.Stat. § 336.3–419 (1988)?

II. As to deposits made on or after August 1, 1992, is the Bank liable for conversion under Minn.Stat. § 336.3–420 (1992)?

III. Which party had the burden of proof regarding whether the Bank followed reasonable commercial practices?

## ANALYSIS

On appeal from summary judgment, a reviewing court must determine: "(1) whether there are any genuine issues of material fact; and (2) whether the lower court erred in its application of the law." *Lubbers v. Anderson*, 539 N.W.2d 398, 401 (Minn.1995). An issue of fact is material if it would affect the outcome of the case. *Zappa v. Fahey*, 310 Minn. 555, 556, 245 N.W.2d 258, 259–60 (1976). The evidence is to be viewed in the light most favorable to the non-prevailing party. *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn.1993). "Questions of law, including the interpretation of statutes, are subject to de novo review." *Bol v. Cole*, 561 N.W.2d 143, 146 (Minn.1997).

In its complaint, APDA alleged that the Bank committed acts of conversion by wrongfully accepting deposits of unendorsed checks from January 1988 through March 1995. The rule on conversion of instruments was, until August 1, 1992, provided by Minn. Stat. § 336.3–419 (1988) and, thereafter, by Minn.Stat. § 336.3–420.1992 Minn. Laws ch. 565, § 60; *Geldert v. American Nat'l Bank*, 506 N.W.2d 22, 27 (Minn.App.1993), *review denied* (Minn. Nov. 16, 1993).

### I.  Liability Under Minn.Stat. § 336.3–419

■ APDA argues that the district court erred in ruling that it cannot maintain an action against the Bank for conversion under Minn.Stat. § 336.3–419 (1988). The statute provided that a representative, which includes a depositary or collecting bank, that

> in good faith and in accordance with the reasonable commercial standards applicable to the business of such representative dealt with an instrument or its proceeds on behalf of one who was not the true owner is not liable in conversion or otherwise to the true owner beyond the amount of any proceeds remaining in its hands.

Minn.Stat. § 336.3–419(1), (3) (1988). A "depositary bank" is the first bank to which an instrument for the payment of money is transferred for collection. Minn.Stat. §§ 336.4–105(a), –104(1)(g) (1988).

In *Geldert v. American Nat'l Bank*, this court expressly held that, under Minn.Stat. § 336.3–419, "a payee cannot directly sue a depositary bank for conversion." 506 N.W.2d at 25; *see also E.S.P., Inc. v. Midway Nat'l Bank*, 447 N.W.2d 882, 883 (Minn. 1989) (Minnesota law prevents payee from asserting a conversion claim directly against depositary or collecting bank).

APDA did not present evidence that the Bank's actions were in any way outside the holding in *Geldert* or the coverage of Minn. Stat. § 336.3–419. The Bank was acting in a representative capacity and, although it made the funds available for immediate withdrawal, it retained the right to set-off the account if it could not collect from the payor. *See* Minn.Stat. § 336.4–201 (1988) (bank is agent or subagent of owner of instrument for payment of money even though credit given for instrument is subject to immediate withdrawal). Further, APDA makes no claim that the Bank acted in bad faith.

APDA contends, however, that the Bank lost the protection of Minn.Stat. § 336.3–419 because it was unreasonable for the Bank to accept checks made payable to a corporation for deposit into an individual or personal account. It is not disputed that the account was in the name of "The American Parkinson Disease Association, Northfield Chapter" and included the APDA tax exempt number. Further, it is not disputed that Bank personnel believed the account to be an APDA account, not Monnot's personal account. The account, thus, was not a personal account.

APDA also contends that the Bank engaged in commercially unreasonable practices by accepting APDA checks without endorsement.[1] But an endorsement is not required as a matter of law. *See* Minn. Stat. § 336.4–205(1) (1988) (depositary bank may supply any endorsement of customer that is necessary to title).

APDA next asserts that the Bank engaged in a commercially unreasonable practice by

---

1. Monnot has Parkinson's disease. In his deposition, he testified that he did not endorse APDA checks because the disease made writing difficult for him.

accepting checks with an account name that did not match that of the named payee.[2] The Bank's vice president, Kenton Raadt, testified by deposition that APDA, with a New York address, was a name "different" from APDA, Northfield Chapter. But Raadt did not testify that it was an unreasonable banking practice for the Bank to accept, for deposit in the APDA Northfield account, a check made out to APDA with its New York address (or any of the other checks). APDA did not provide affidavit or deposition testimony alleging that this was an unreasonable banking practice and, thus, failed to present evidence creating an issue of material fact as to whether the Bank's actions were consistent with reasonable commercial banking practices.

The district court did not err in determining that, as a matter of law, APDA, as payee, cannot assert a conversion claim against the Bank for any alleged acts of conversion before August 1, 1992.

## II. Liability Under Minn.Stat. § 336.3–420

Effective August 1, 1992, Minn.Stat. § 336.3–419 was repealed and replaced with Minn.Stat. § 336.3–420, which reads in part:

The law applicable to conversion of personal property applies to instruments. An instrument is also converted if it is taken by transfer, other than a negotiation, from a person not entitled to enforce the instrument or a bank makes or obtains payment with respect to the instrument for a person not entitled to enforce the instrument or receive payment.

Minn.Stat. § 336.3–420(a) (1992). A holder (or non-holder with the rights of a holder) of an instrument is "entitled to enforce" that instrument. Minn.Stat. § 336.3–301 (1992). Because the checks deposited by Monnot were made payable to APDA, the question is whether Monnot was "entitled to enforce" the embezzled checks on behalf of APDA.

Agency is defined as

"the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act."

*Jurek v. Thompson,* 308 Minn. 191, 197, 241 N.W.2d 788, 791 (1976) (quoting Restatement (Second) of Agency § 1 (1958)). The record shows that Williams, as national director of APDA, told Monnot to open an account at the Bank and to deposit and withdraw funds from that account. In response to Williams' instructions, Monnot opened the account, deposited checks sent by Williams, and withdrew money from the account. Williams, who was empowered to do so, made Monnot an agent of APDA with express authority to open an APDA account and to conduct transactions through it. *See Hockemeyer v. Pooler,* 268 Minn. 551, 565, 130 N.W.2d 367, 377 (1964) ("Express authority is that authority which the principal directly grants to the agent."). By asking Monnot to open an APDA account, Williams, though acting with criminal intent, knowingly gave Monnot actual authority on behalf of APDA to deposit the stolen checks in that account.

Monnot, well-known in the community as a nationally prominent APDA fund-raiser, also had apparent authority to act on behalf of APDA. Apparent authority is

"created as to a third person by written or spoken words or any other conduct of the principal which, reasonably interpreted, causes the third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him."

*Duluth Herald & News Trib. v. Plymouth Optical Co.,* 286 Minn. 495, 498, 176 N.W.2d 552, 555 (1970) (quoting Restatement (Second) of Agency § 27 (1958)). To establish apparent authority:

The principal must have held the agent out as having authority, or must have knowingly permitted the agent to act on its behalf; furthermore, the party dealing with the agent must have actual knowledge that the agent was held out by the principal as having such authority or had been permitted by the principal to act on its behalf; and the proof of the agent's apparent au-

---

**2.** Some of the deposited checks were made out to APDA, some to APDA, Inc., and others included APDA's New York address. One check was made out to APDA's Massachusetts chapter.

thority must be found in the conduct of the principal, not the agent.

*Hockemeyer,* 268 Minn. at 562, 130 N.W.2d at 375. Here, APDA led the Bank to believe that Monnot had authority to act on behalf of APDA. Monnot opened the account and gave the Bank the APDA tax exempt number, which had been provided by Williams. Williams himself occasionally talked with the Bank vice-president about the APDA account and sent some APDA checks directly to the bank for deposit in that account.

APDA argues that, in granting Monnot his authority, Williams was not acting within his scope as the National Director, but rather was acting as a "thief." Williams, however, was authorized by APDA to open APDA chapters and bank accounts around the country. The fact that he instructed Monnot to open an APDA account for fraudulent purposes does not convert Williams' authorized actions into unauthorized actions. *Cf. Town & Country State Bank v. First State Bank,* 358 N.W.2d 387, 396 (Minn.1984) (that checks were signed as part of fraudulent scheme does not turn signatures of persons authorized to sign checks into unauthorized signatures); *Opatz v. John G. Kinnard & Co.,* 454 N.W.2d 471, 473–74 (Minn.App.1990) (principal subject to loss caused by apparently authorized actions of agent).

Because Monnot had both actual and apparent authority to act on behalf of APDA, he was "entitled to enforce" (and thus to deposit) the APDA checks. Under Minn. Stat. § 336.3–420, the Bank is not liable for conversion.

■ The Bank also escapes liability in this case because it was a "holder in due course" of the deposited APDA checks. Minn.Stat. § 336.3–306 (1992) provides:

A person taking an instrument, other than a person having rights of a holder in due course, is subject to a claim of a property or possessory right in the instrument or its proceeds, including a claim to rescind a negotiation and to recover the instrument or its proceeds. *A person having rights as a holder in due course takes free of the claim to the instrument.*

(Emphasis added.) A depositary bank becomes a "holder in due course"

if the customer at the time of delivery [of an item for collection] was a holder of the item, whether or not the customer endorses the item, and, if the bank satisfies the other requirements of section 336.3–302.

Minn.Stat. § 336.4–205(1) (1992). Thus, the Bank was a holder in due course; its customer, APDA, was a holder of the checks.

The Bank is also a "holder in due course" if:

(1) the instrument when issued or negotiated to the holder does not bear such apparent evidence of forgery or alteration or is not otherwise so irregular or incomplete as to call into question its authenticity; and

(2) the holder took the instrument (i) for value, (ii) in good faith, (iii) without notice that the instrument is overdue or has been dishonored or that there is an uncured default with respect to payment of another instrument issued as part of the same series, (iv) without notice that the instrument contains an unauthorized signature or has been altered, (v) without notice of any claim to the instrument described in section 336.3–306, and (vi) without notice that any party has a defense or claim in recoupment described in section 336.3–305(a).

Minn.Stat. § 336.3–302(a)(1), (2) (1992). Here, the evidence does not show that reasonable commercial practice required the Bank to question the authenticity of the checks. Further, because the Bank paid out all monies in the account, it took the checks for value. *See Menard, Inc. v. King De Son, Co.,* 467 N.W.2d 34, 37 (Minn.App.1991) (bank that pays funds out after deposit of negotiable instrument has taken instrument "for value").

APDA has not alleged that the Bank received any notice of any defense or claim relating to the checks deposited in the APDA Northfield Chapter account. Therefore, under these circumstances, the Bank was a "holder in due course" and took the checks free of any claims under Minn.Stat. § 336.3–306.

### III. Burden of Going Forward with Evidence

■ APDA argues that the Bank had the burden of proving that it had followed reasonable commercial practices. APDA cites *Hydroflo Corp. v. First Nat'l Bank,* 217 Neb. 20, 349 N.W.2d 615, 619 (1984). When the Bank accepted unendorsed checks on behalf of its customer, APDA, the Bank acted in accordance with commercially reasonable standards. Minn.Stat. § 336.4–205 (1988) (allowing a collecting or depository bank to supply an endorsement for its customers). Additionally, there was evidence that the stolen checks were deposited by an authorized APDA agent in an APDA bank account. Any payee names on the checks other than APDA, Northfield, were either APDA chapters or simply the APDA or APDA, Inc. These names were not unreasonably different. These facts established a prima facie case that the Bank acted within commercially reasonable standards and qualified for the defense of Minn.Stat. § 336.3–419(3) (1988). A prima facie showing shifts the burden of going forward with the evidence to the opposing party. *Johnson v. Minnesota Dep't of Human Servs.,* 565 N.W.2d 453, 458 (Minn.App.1997). Here, APDA presented no evidence relating to reasonable banking practices and, thus, did not overcome the prima facie showing. Where prima facie evidence is unrebutted, the party has met its burden. *Id.* Consequently, the Bank met its burden to show that it acted within commercially reasonable standards.

APDA did, however, assert that the practices of the Bank in this case were not consistent with the Bank's own established practices. But at no point did APDA present evidence that the Bank's practices with regard to the APDA account were different from the Bank's established practices. Here, too, APDA failed to meet its burden to produce evidence.

### DECISION

The Bank is not liable under either Minn. Stat. § 336.3–419 (1988) or Minn.Stat. § 336.3–420 (1992) for accepting the checks stolen from APDA. The loss must fall on APDA, whose agent turned thief and abused his authority. The district court did not err in granting summary judgment in the Bank's favor.[3]

**Affirmed.**

---

3. In addition to alleging that the Bank violated Chapter 3 of the UCC, APDA also alleged that the Bank committed common-law negligence by permitting Williams and Monnot to establish the APDA Northfield Chapter account, *in failing to* require endorsement for the deposited checks, and in failing to follow the standard of care required of depositary banks in accepting instruments for payment. On appeal, however, APDA does not argue this claim (other than to briefly mention it in its reply brief). We therefore do not address the issue. *McIntire v. State,* 458 N.W.2d 714, 717 (Minn.App.1990) (claim not addressed in briefs is waived and cannot be revived in reply brief), *review denied* (Minn. Sept. 28, 1990).